# NO. 12-08-00371-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DONALD EMMETT WARD,* | § | *APPEAL FROM THE 1ST* |
| *SHERREL SCARBOROUGH* | | |
| *AND DENNIS SCARBOROUGH,* | | |
| *APPELLANTS* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *THOMAS LADNER,* | | |
| *APPELLEE* | § | *SABINE COUNTY, TEXAS* |

## *OPINION ON REHEARING*

Thomas Ladner filed a motion for rehearing, to which Donald Emmett Ward, Sherrel Scarborough, and Dennis Scarborough responded. Ladner's motion for rehearing is granted. We withdraw our opinion and judgment of January 6, 2010 and substitute the following opinion and corresponding judgment in its place.

Donald Emmett Ward, Sherrel Scarborough, and Dennis Scarborough (collectively "Appellants") appeal the trial court's judgment entered in favor of Thomas Ladner. Appellants raise four issues on appeal. We affirm.

## BACKGROUND

Dillis Ward and his wife, Gertie, owned property on the shore of Toledo Bend Reservoir in Sabine County, Texas (the "property"). The property, on which stood a small store with living quarters, was surrounded by land owned by the Sabine River Authority of Texas. In 1987, Dillis Ward died. Thereafter, Dillis Ward's son, Donald Ward ("Ward"), had a conversation with Ladner concerning the property. According to Ward, the two entered into an oral agreement whereby Ladner would rent the property. However, according to Ladner, the two orally agreed that he would purchase the property.

Ladner lived on the property during the late 1980s and, since that time, has received rental income from the campsites located predominantly on the adjacent property owned by the Sabine River Authority. Ward visited the property occasionally over the years and contacted Ladner prior to these visits. Ward's daughter, Sherrel Scarborough, likewise visited the property occasionally during the relevant period and also contacted Ladner prior to her arrival.

In 1996, Gertie died. In 2007, by deed of gift, Ward transferred the property to Sherrel Scarborough and her husband, Dennis Scarborough. In January 2007, the Scarboroughs moved to the property. In August 2007, the Scarboroughs gave notice to Ladner that they would not continue to rent the property to him.

Ladner filed the instant suit seeking a declaratory judgment that he and Ward entered into a binding contract for the purchase of the property. Ladner further sought specific performance of an oral real estate contract. Ladner also made allegations of, among other things, trespass to try title and promissory estoppel. Thereafter, Ladner sought a temporary restraining order. In his sworn petition and affidavit filed in support of his petition for temporary restraining order, Ladner averred that Ward agreed to sell the property for $160,000 "paid at $500 per month with no interest (320 months or 26.6 years to pay off)." Ladner further alleged that he "agreed to this arrangement and began paying the monthly payments to Donald Ward by check mailed to Donald Ward's address in Temple, Texas."

Following the presentation of evidence, the matter was submitted to the jury. Ultimately, the jury found that the parties had entered into an oral agreement for the sale of the property. The jury further found that Ladner (1) made monthly payments on the $160,000 beginning in 1987 and continuing until October 2007, (2) took possession of the property in 1987 and retained such possession to the present time, and (3) made permanent and valuable improvements upon the property beginning in 1987. The trial court entered judgment in Ladner's favor and ordered specific performance of the oral contract. By its judgment, the trial court further ordered the transfer of title to the property to Ladner and that Ladner pay the remainder of the unpaid balance of $160,000 at a rate of $625 per month.[1] This appeal followed.

---

[1] Appellants were awarded a lien against the property to secure Ladner's indebtedness until the indebtedness was fully paid.

In their first issue, Appellants argue that the trial court abused its discretion by submitting Question 1 because the evidence at trial regarding the terms of the oral contract for sale of real estate differed materially and substantially from the terms of the contract alleged in Ladner's live pleadings.

Generally, we review an issue of whether a question was improperly submitted to the jury for abuse of discretion. *See Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, 154 S.W.3d 878, 885 (Tex. App.–Dallas 2005, pet. denied); *see also Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990)). A trial court abuses its discretion where it submits a jury question that is neither supported by the pleadings nor tried by consent. *See Recognition Commc'ns, Inc.*, 154 S.W.3d at 885. A trial court abuses its discretion if its action is arbitrary, unreasonable, and without reference to any guiding rules or principles or where it clearly fails to analyze or apply the law correctly. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

The Texas Rules of Civil Procedure are designed to prevent a variance between pleading and proof from having the effect of precluding any recovery. *See, e.g.,* TEX. R. CIV. P. 66, 67, 90. Nonetheless, a plaintiff in an action on a contract must recover, if at all, on the cause of action as it has been alleged. *See Hollingsworth v. Nw. Nat'l Ins. Co.*, 522 S.W.2d 242, 246 (Tex. Civ. App.–Texarkana 1975, no writ). If the proof shows a contract essentially different from the contract alleged, the action will fail. *See Sanchez v. Hernandez*, 456 S.W.2d 497, 498 (Tex. Civ. App.–San Antonio 1970, writ ref'd n.r.e.).

Yet, not every variance between the contract pleaded and the proof offered is a fatal one. *Id.* For instance, a variance arising from an attempt to plead the evidence relied on to establish the existence of an oral contract is not fatal unless it tends to mislead or surprise the opposing party. *See Bland v. Cruce*, 238 S.W. 720, 722 (Tex. Civ. App.–Dallas 1922, no writ).

The Texas Rules of Appellate Procedure control the required contents and organization for an appellant's brief. *See* TEX. R. APP. P. 38.1. One of those requirements is that an appellant's brief must contain a clear and concise argument, including appropriate citations to authority and the record. *See* TEX. R. APP. P. 38.1(i). This requirement is not satisfied by merely uttering brief conclusory statements unsupported by legal citations. *Valadez v. Avitia*, 238

S.W.3d 843, 845 (Tex. App.–El Paso 2007, no pet.).  Failure to provide substantive analysis of the legal issue presented results in waiver of the complaint.  ***Id.***

In the case at hand, Appellants expressly recognize in their brief that, to be fatal, a variance must be substantial, misleading, constitute surprise, and be a prejudicial departure from the pleadings.  But Appellants make only a single conclusory reference to this key issue apart from their recognition of its existence.  Specifically, Appellants state, "To plead the terms of one contract in a sworn pleading, amend the terms claimed in trial testimony, then not be certain of the terms, then request a Jury issue that is silent as to the terms of the contract is substantially misleading and constituted surprise …."  Appellants do not set forth any further facts underlying their being surprised or misled by this variance.  As such, we hold that Appellants have waived the issue.  *See* TEX. R. APP. P. 38.1(i).  Appellants' first issue is overruled.

<u>SPECIFIC PERFORMANCE</u>

Appellants' second and third issues concern the trial court's order of specific performance.  In their second issue, Appellants argue that the trial court erred in ordering specific performance when there was a jury finding that an oral contract existed, but not jury findings determining the material terms of the contract.  In their third issue, Appellants argue that the trial court erred in overruling their objection to Question 1 of the court's charge due to its failure to make inquiry of the jury concerning essential contract terms or whether Ladner complied with those terms.  Question 1 inquired of the jury as follows:  "Did Thomas Ladner and Donald Ward enter into an oral agreement in 1987 in which Donald Ward agreed to sell the subject property to Thomas Ladner?"  The jury answered Question 1 in the affirmative.

It is the trial court's responsibility to submit a proper charge.  *See* ***Spencer v. Eagle Star Ins. Co.***, 876 S.W.2d 154, 158 (Tex. 1994).  One who seeks specific performance of a real estate contract must prove that he has diligently and timely performed or tendered performance of all obligations set forth in the contract.  ***Texacally Joint Venture v. King***, 719 S.W.2d 652, 653 (Tex. App–Austin 1986, writ ref'd n.r.e.).  Price is an essential term required for the sale of real property.  *See* ***Rus-Ann Dev., Inc. v. ECGC, Inc.***, 222 S.W.3d 921, 927 (Tex. App.–Tyler 2007,

4

no pet.).[2]  Thus, to be entitled to specific performance, Ladner had to prove that he paid the purchase price agreed to by the parties.[3]  *See King*, 719 S.W.2d at 653.

Whether an oral contract existed is a question of fact for the jury.  *See American Transfer & Storage Co. v. Reichley*, 643 S.W.2d 162, 164 (Tex. Civ. App.–Amarillo 1976, writ ref'd).  Because price is an essential element of a real estate contract, Ladner was required to secure a finding on the contract price to be entitled to specific performance.

At the charge conference, Appellants objected to the submission of Question 1 because it did not contain all of the essential terms alleged by Appellees in their pleadings, one of which was a contract price.  Appellants further sought to submit a charge question that contained the contract price pleaded by Ladner.

The testimony in the case at hand establishes that both Ward's and Ladner's memories concerning some of the details of the transaction had faded during this interim period.  Yet, the testimonies of the two principals did not waiver on certain core facts, which are summarized as follows:  Ladner testified that Ward agreed to sell him the property for $160,000; Ward testified that no communications concerning an agreement to sell the property ever transpired between him and Ladner.

Ward's testimony that there existed no agreement to sell the property amounts to a denunciation of the existence of the totality of the agreement, including a $160,000 contract price.  However, there is no testimony of record concerning a contract price other than Ladner's testimony that the agreed price was $160,000.00.  Thus, even though Ward's denial of the existence of the contract necessarily included a denial of any agreement concerning the price, the trial court's submission of the question concerning whether the parties reached an agreement, if answered in the affirmative, necessarily disregards the totality of Ward's testimony.  As such, if

---

[2] In their brief, Appellants note that in *Rus-Ann Devlopment*, we "held that terms of the seller financing 'such as how, when, where, how much[,] and to whom payments were made' were necessary elements in the application of specific performance."  *See Rus-Ann Dev.*, 222 S.W.3d at 927.  However, according to our opinion in *Rus-Ann Development*, the language quoted by Appellants concerns the contentions made by the appellant in that case.  *See id.* at 928.  We did not specifically hold that these terms of seller financing were essential.  *See id.*  Rather, we noted that these terms were provisions of the lease agreement, which the trial court could consider in determining the terms of a contract to be enforced by specific performance.  *See id.*  In the instant case, Appellants do not expound upon the aforementioned quote from *Rus-Ann Development* concerning seller financing terms, but rather focus their argument on the amount of consideration generally.  We will likewise concentrate our discussion of Appellants' second and third issues accordingly.  *See* TEX. R. APP. P. 38.1(i).

[3] The issue of evidence underlying Ladner's payment of consideration, as well as that of his possession of and making improvements to the property, is discussed in our analysis of Appellants' fourth issue.

the jury determined that the parties agreed that Ward would sell the subject property to Ladner, the evidence was conclusive regarding the sales price. Because the evidence was conclusive on this material term, no jury finding was required. *See **Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.***, 298 S.W.3d 216, 235 (Tex. App.–San Antonio 2009, pet. filed). Therefore, we hold that the trial court did not err in refusing to submit a question to the jury that made no inquiry concerning the sales price. We further hold that the trial court did not err in ordering specific performance absent a jury finding concerning sales price because the evidence concerning sales price was conclusively established. *See **Rus-Ann Dev.***, 222 S.W.3d at 927 (stating that specific performance will be decreed where essential terms of contract are expressed with reasonable certainty). Appellants' second and third issues are overruled.

<u>EVIDENTIARY SUFFICIENCY</u>

In their fourth issue, Appellants argue that the evidence was both legally and factually insufficient to sustain specific performance under the equitable exception to the statute of frauds.

**<u>Legal Sufficiency</u>**

A party who challenges the legal sufficiency of the evidence to support an issue upon which he did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. ***Bright v. Addison***, 171 S.W.3d 588, 595 (Tex. App.–Dallas 2005, pet. denied). When reviewing a "no evidence" issue, we determine "whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review." ***City of Keller v. Wilson***, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. ***Id.*** The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *See **Canal Ins. Co. v. Hopkins***, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied) (citing ***City of Keller***, 168 S.W.3d at 819). The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. ***Id.*** Accordingly, we must assume that the finder of fact decided all credibility questions in favor of the findings if a reasonable person could do so. ***Id.*** If a reasonable finder of fact could have done so, we must assume that the finder of fact chose what testimony to disregard in a way that favored the findings. *See **Canal***, 238 S.W.3d at 557 (citing ***City of Keller***, 168 S.W.3d at 820).

A finder of fact "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *Canal*, 238 S.W.3d at 557 (quoting *City of Keller*, 168 S.W.3d at 819–20).

Moreover, it is within the finder of fact's province to resolve conflicts in the evidence. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 820). Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where a reasonable finder of fact could resolve conflicting evidence either way, we must presume the finder of fact did so in favor of the findings. *Canal*, 238 S.W.3d at 557 (citing *City of Keller*, 168 S.W.3d at 821). Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id.*

Additionally, any ultimate fact may be proved by circumstantial evidence. *See Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 12 (Tex. App.–Tyler 2000, pet. denied). However, the legal equivalent of no evidence exists when circumstantial evidence gives life to inferences equally consistent with two different propositions. *Id.* Furthermore, when circumstances are equally consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred and the no evidence challenge must be sustained. *Id.*

## Equitable Exception to the Statute of Frauds

The statute of frauds is an affirmative defense requiring that certain specified classes of contracts be in writing to be enforceable. *See* TEX. R. CIV. P. 94; *Gerstacker v. Blum Consulting Engr's, Inc.*, 884 S.W.2d 845, 850 (Tex. App.–Dallas 1994, writ denied). Whether a contract falls within the statute of frauds is a question of law. *Gerstacker*, 884 S.W.2d at 850. The instant case concerns allegations of a contract for the sale of real estate. Therefore, the parties' contract, if any, is governed by the statute of frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4) (Vernon 2009) (contract for sale of real estate not enforceable unless in writing and signed by person charged with agreement).

However, there exists an equitable exception to the statute of frauds. *See Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (Tex. 1921). In *Hooks*, the Texas Supreme Court held that to relieve a parol sale of land from the operation of the statute of frauds, three

things are necessary: (1) payment of the consideration, whether it be in money or services; (2) possession by the vendee; and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor.[4] *Id.* The court described these three elements as "indispensable." *Id.*

In the case at hand, the burden was upon Ladner to secure jury findings to support this equitable exception. *See Choi v. McKenzie*, 975 S.W.2d 740, 743 (Tex. App.–Corpus Christi 1998, pet. denied). He sought to do so by the submission of Questions 2, 3, and 4.

*Payment of Consideration*

Question 2 queries, "Did Thomas Ladner make monthly payments on the $160,000.00 beginning in 1987 and continuing until October 2007?" As set forth previously, since the jury determined that the parties agreed that Ward would sell the subject property to Ladner, the evidence was conclusive regarding the $160,000 sales price. Based on our review of the record, we note that there is evidence that either Ladner or someone acting on his behalf made multiple payments to Ward during the time period in question. Ladner testified that he paid $410 per month from 1987 through 2001 and, thereafter, paid $625 per month. Ladner further testified that he was "up to date" on his payments.[5] Moreover, Ladner confirmed that such payments were made over one hundred fifty-six months. We hold that there is legally sufficient evidence to support the jury's answer to Question 2.

Appellants argue that payments of money by Ladner to Ward is equally consistent with the competing arguments proposed by the parties. In other words, according to Appellants, there is no evidence tending to support that it is more probable that these payments were made as payment toward the purchase of the property than it is that the payments were made as rent. Thus, neither purpose for the payment of these monies can be inferred and Ward's no evidence challenge must be sustained with regard to Question 2. *See Bertrand*, 37 S.W.3d at 12. However, the jury found in its answer to Question 1 that Thomas Ladner and Donald Ward entered into an oral agreement in which Donald Ward agreed "to *sell* the subject property" to Thomas Ladner (emphasis added). Determining facts is the exclusive province of the finder of fact in the trial court. *See Barnes v. Western Alliance Ins. Co.*, 844 S.W.2d 264, 270 (Tex.

---

[4] The court noted that absent such improvements, it would consider the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. *Id.*

[5] Ladner's trial testimony was given in May 2008. The parties stipulated at trial that the total amount of the payments made by Thomas Ladner to the defendants as of May 2008 was $120,185.00.

App.–Amarillo 1993, writ dism'd by agr.). An unchallenged jury finding is binding on an appellate court. *See **Reliance Ins. Co. v. Denton Cent. Appraisal Dist.***, 999 S.W.2d 626, 629 (Tex. App.–Fort Worth 1999, no pet.).

Here, we have overruled Appellants' challenges to Question 1. As such, we are bound by the jury's finding that Ward agreed to sell the subject property to Ladner. Consequently, because the jury found that there was an agreement to sell the property, we will not analyze Ladner's payments to Ward in a manner inconsistent with the jury's finding in Question 1.

*Possession*

Question 3 asks, "Did Thomas Ladner take possession of the property in question in 1987 and retain such possession to the present time?" From our review of the record, we note that there is evidence that Ladner was in possession of the property during the relevant time period. However, similar to the evidence underlying payment of consideration, Appellants again argue that Ladner's possession of the property is no more indicative of his status as a vendee than it is of his status as a person who is renting property. As with our analysis of the issue of payment of consideration, we decline to analyze Ladner's possession of the subject property in a manner inconsistent with the jury's finding in Question 1. Therefore, we hold that there is legally sufficient evidence to support the jury's answer to Question 3.

*Making of Improvements with Consent*

Question 4 asks, "Did Thomas Ladner make permanent and valuable improvements upon the property in question beginning in 1987?" Based on our review of the record, we conclude that there is legally sufficient evidence to support that Ladner made permanent and valuable improvements on the property. Specifically, the evidence supports that Ladner made improvements such as replacing the roof on the building located on the property and converting the interior of the structure, which was previously a store, to a residence. We note that no inquiry was made of the jury concerning Ward's consent to these improvements. However, Ladner's testimony supports that such improvements were made with Ward's consent.[6]

---

[6] Question 4 is an incomplete submission to which no objection was made. *See* TEX. R. CIV. P. 279. Because the record contains some evidence that Ward consented to Ladner's making improvements to the property, which is consistent with the trial court's judgment, we deem the missing element of consent found. ***Id.***; *see **Chon Tri v. J.T.T.***, 162 S.W.3d 552, 557 (Tex. 2005); ***State Farm Life Ins. Co. v. Beaston***, 907 S.W.2d 430, 437 (Tex. 1995).

9

We hold that the evidence is legally sufficient to sustain specific performance under the equitable exception to the statute of frauds.

## Factual Sufficiency

We test the factual sufficiency of the evidence by examining the entire record to determine whether a finding is clearly wrong and unjust. *See Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 437 (Tex. App.–Texarkana 2006, no pet.). When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all the evidence, not just that evidence which supports the verdict. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.*; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We are not a fact finder. *See Justiss*, 202 S.W.3d at 437. Accordingly, we may not pass on the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ellis*, 971 S.W.2d at 407. If we find the evidence is factually insufficient, we must clearly state why the jury's finding is insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

In the instant case, Appellants have not argued, outside of their statement of their fourth issue, that any particular finding is factually insufficient. Rather, they generally contend that the evidence is factually insufficient to sustain specific performance under the equitable exception to the statute of frauds. We have examined the entirety of the record; we have considered and weighed all of the evidence. Having done so, we have not determined that any evidence tending to contradict the evidence supporting the jury's findings is of such character so as to cause us to conclude that the jury's findings are clearly wrong and unjust. Therefore, we hold that the evidence is factually sufficient to sustain specific performance under the equitable exception to the statute of frauds.

## Summation

As set forth above, we have concluded that there is legally and factually sufficient to sustain specific performance under the equitable exception to the statute of frauds. Accordingly, we hold that the exception set forth in *Hooks v. Bridgewater* is applicable and, as a result, the

parties' contract was relieved from the operation of the statute of frauds.  Appellants' fourth issue is overruled.

## DISPOSITION

Having overruled Appellants' first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.

### SAM GRIFFITH
Justice

Opinion delivered June 30, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)