Opinion issued June 9, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00369-CV

———————————

Roy Nash, Appellant

V.

Garden City
Apartments,
Appellee



 



 

On Appeal from the County Civil Court at Law No. 3

Harris County, Texas



Trial Court Case No. 951400

 



 

MEMORANDUM OPINION

This is an
appeal from a forcible-detainer action to evict the defendant/appellant Roy
Nash from the premises of the plaintiff/appellee Garden City Apartments
(“Garden City”).  We affirm.

BACKGROUND

Garden City Apartments is a
federally subsidized Section 8 housing project in Houston, Texas.  The majority of the residents at Garden City
are adult females or children.  Nash is a
male resident.   

PK Management is Garden City’s
management company.  Brenda Jones is PK
Management’s vice-president.  The events
leading to Nash’s eviction from Garden Oaks started on September 16, 2009, when
Jones was at Garden City conducting community meetings with the residents to collect
specific information about their safety concerns and kick-off a crime-prevention
“1-800 Tips” program.    Throughout the
day at these meetings, Jones received seven or eight complaints from different
residents about Nash behaving inappropriately towards children at the
property.  Specifically, residence
complained about his “attempt[ing] to lure children into his apartment by
giving them quarters.”  

In response to these complaints,
Jones and the area manager, Sonia White,[1] summoned Nash for a
meeting.  Jones testified that Nash
immediately said, “I know why I am here. 
I won’t do it anymore.”  He then
explained that while he knew that many of the mothers were unhappy about him
trying to give their children money, they just did not understand that he was
trying to just be nice to the children. 

Jones testified that during her
questioning of Nash, he “stated that [he] never paid for sex with a child, but
. . . hired people but they were all adults.” 
When pressed for specifics, he stated that he had hired “residents” of Garden
City and explained “if I didn’t do it, how would they pay for their Pampers?”  At that point, Jones made the decision to
terminate Nash’s lease and she thus ended the meeting.  During cross-examination at trial, Jones
agreed that she did not know exactly “when Mr. Nash had sex with any of these
people.”  Nash testified at trial that he
has never “hired any of [his] neighbors for sex” but that he hired prostitutes
20 years ago when his wife died, and that he had not had prostitutes in his
apartment or common areas since he signed his lease in 2008.      

A.   The lease

Nash’s lease introduced at trial had
an initial term of September 1, 2008 to August 31, 2009, and then “continu[es] for
successive terms of one month each unless automatically terminated as permitted
by paragraph 23 of the Agreement.”    One
ground for termination under paragraph 23 is “criminal activity by a tenant . .
. . that threatens the health, safety, or right to peaceful enjoyment of the
premises by other residents . . . or that threatens the health, safety, or
right to peaceful enjoyment of their residences by persons residing in the
immediate vicinity of the premises.”  The
lease can also be terminated “if the Landlord determines that the tenant, any
member of the tenant’s household, a guest or another person under the tenant’s
control has engaged in the criminal activity, regardless of whether [that
person] . . . has been arrested or convicted for such activity.”  

B.   The lease termination

On September 16, 2009, shortly
after their meeting, Jones sent to Nash a “Termination of Residency and Federal
Assistance Letter.”  It cited, as the
reason for the termination: 

Statement: I, Brenda Jones, Vice President
and witnessed by Sonya Ross, Area Manager, am making the following statement
regarding the Mr. Roy Nash admission of his involvement in Criminal
Prostitution.  During a conversation with
Mr. Roy Nash concerning suspicious behavior by him toward children he denied
his involvement with any crime against children, but admitted to Sonya and me
of hiring residents for sexual favors for money.  Management has made a decision to terminate
Mr. Nash for material noncompliance of his lease for his involvement in
criminal behavior at this property.

The statement was signed by both Brenda Jones and
Sonya Ross.  

 After again providing written notice to vacate
on September 29, 2009, Garden City filed an eviction suit.  

C.   The Trial Court Judgment

Following a bench trial, the court stated
that Garden City had met its burden and announced it was rendering judgment in
favor of Garden City.  It signed a final
judgment on March 15, 2010.  

ANALYSIS

Nash urges two grounds for reversal
of the trial court’s judgment: (1) Garden City produced no evidence that “Nash
breached the operative lease,” and (2) that the termination notice “lacked the
required specificity.”  

A.  
Breach of Operative Lease

In his first issue, Nash contends
that there is no competent evidence that Nash engaged in improper conduct
during the operative lease. 
Specifically, he argues that (1) Jones’s testimony cannot establish a
breach of the operative lease because she testified that she did not know when Nash hired prostitutes, and (2)
Nash’s testimony cannot establish a breach of the operative lease because he
testified that he only hired prostitutes 20 years ago.  

1.     Standard of Review  

In a bench trial, when no findings
of fact and conclusions of law are filed, the trial court’s judgment implies
all necessary findings of fact to support it. Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989); Baytown State Bank v. Nimmons, 904
S.W.2d 902, 904 (Tex. App.—Houston [1st Dist.] 1995, writ denied). When the
implied findings of fact are supported by evidence, it is an appellate court’s
duty to uphold judgment on any theory of law applicable to the case. Point Lookout W., Inc. v. Whorton, 742
S.W.2d 277, 278 (Tex. 1987); Weng Enters.
v. Embassy World Travel, Inc., 837 S.W.2d 217, 223 (Tex. App.—Houston [1st
Dist.] 1992, no writ). Implied findings may be challenged by factual and legal
sufficiency points.  Roberson, 768 S.W.2d at 281; Giangrosso
v. Crosley, 840 S.W.2d 765, 769 (Tex. App.—Houston [1st Dist.] 1992, no
writ).

The test for legal sufficiency is
“whether the evidence at trial would enable reasonable and fair-minded people
to reach the verdict under review.” City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  In making this determination, we credit
favorable evidence if a reasonable factfinder could, and disregard contrary
evidence unless a reasonable factfinder could not. Id.  So long as the evidence
falls within the zone of reasonable disagreement, we may not substitute our
judgment for that of the factfinder.  Id. at 822.  The factfinder is the sole judge of the
credibility of the witnesses and the weight to give their testimony. Id. at 819. Although we consider the
evidence in a light most favorable to the challenged findings, indulging every
reasonable inference that supports them, we may not disregard evidence that
allows only one inference. Id. at
822.

2.     Discussion

At the close of the trial, the
court stated that its judgment rested in part on its credibility determinations
about the witnesses and testimony.  On
appeal, Garden City similarly emphasizes the factfinder’s broad discretion in
this regard.  Nash contends, however,
that “even if the trial court believed all of Jones’ testimony and none of
Nash’s testimony, Garden City still failed to provide legally sufficient
evidence that Nash violated the Lease.”  Nash
also cites Joseph v. Beaumont Housing
Authority, 99 S.W.3d 765 (Tex. App.—Beaumont 2003, no pet.) for the
proposition that a “tenant in a residential lease may only be evicted for
conduct during the ‘operative lease.’” 
Because the “only lease before the trial court was the Lease introduced
by Garden City, which became effective on September 1, 2008,” Nash insists that
“Garden City was required to provide legally sufficient evidence that Nash
committed a lease violation on or after September 1, 2008.”  In sum, Nash argues that Garden City’s
failure to prove that Nash violated the lease—as well as its failure to prove the date of any alleged violation—renders the trial court’s judgment in favor of
Garden City unsupported by legally sufficient evidence.  We disagree.

The trial court was presented with
sufficient evidence that Nash violated his lease by engaging in criminal
conduct while living at Garden City.  Jones not only testified
that Nash admitted to paying for sex, but that he admitted to paying other residents for sex so that they would
have money to buy diapers for their children.   
At trial, Nash denied ever paying residents for sex and testified instead
that he had hired prostitutes 20 years ago. 
It was “within the finder of fact’s province to resolve [these]
conflicts in the evidence.” Ward v.
Ladner, 322 S.W.3d 692, 699 (Tex. App.—Tyler 2010, pet. denied); see also id. (“The finder of fact is
free to believe one witness and disbelieve another, and reviewing courts may
not impose their own opinions to the contrary.”).  

We “must . . . indulge every reasonable
inference” supporting the trial court’s judgment.  Busch
v. Hudson & Keyse, LLC, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th
Dist.] 2010, no pet.).  Nash argues that
Jones’s testimony left the trial court “forced to speculate” as to when Nash paid for sex, and that the
court “could not infer that Nash had in fact hired prostitutes during the
operative lease.”  While Nash is correct
that Jones testified that she did not know exactly when Nash paid others to
perform sexual acts, the evidence that it was other Garden City residents that he paid supports the reasonable
inference that Nash paid for sex while residing at Garden City Apartments in
violation of his lease.  

There is no evidence that Nash
lived at Garden City apartments before September 1, 2008—the effective date on the lease admitted at
trial.  Nonetheless, implicit in Nash’s
heavy reliance on Joseph v. Beaumont
Housing Authority and   his argument
that Garden City “was required to provide legally sufficient evidence that Nash
committed a lease violation on or after September 1, 2008” is the argument that
if Nash engaged in criminal activity while living at Garden City but under an
earlier lease, that criminal activity could not support the trial court’s
eviction judgment.  We do not read Joseph so broadly.  

In Joseph, the Beaumont Housing Authority (“BHA”) sued an apartment
tenant for eviction based on unpaid rent. 
99 S.W.3d at 766.  The justice court
granted the tenant possession of the property, but awarded BHA $600 in unpaid
rent.  Id.  BHA appealed to the
county court and, two days later, signed a new lease with the tenant.  Id.  During this new lease period, the county
court heard the appeal of the justice court judgment and granted BHA possession
of the premises.  Id.  On appeal, the Beaumont
Court of Appeals held that the tenant was entitled to possession of the
apartment under the new lease because “BHA did not amend its pleadings after
executing the new lease and no violation or breach under that lease was ever
alleged.”  Id.  Thus, the court
explained, at the time of trial, the tenant “was entitled to possession of the
premises under the operative lease.”  Id. 


Joseph is simply
inapplicable here, as Garden City did not execute a new lease with Nash after
suing to evict him.  Nothing in Joseph or in the language of the lease
itself supports the argument that Garden City must prove exactly when Nash
engaged in criminal activity during his Garden City residency to support lease
termination.  And to hold that Garden
City cannot terminate a lease based on criminal behavior it just discovered that
may have occurred under a prior lease would be nonsensical, as such a holding
would simply reward those who manage to conceal inappropriate or unlawful
behavior until the end of a renewable lease term.  We decline to read Joseph so broadly.    

Because there is legally sufficient
evidence to support the trial court’s conclusion that Nash breached his lease,
we overrule Nash’s first issue.  

B.  
Notice of Violation of Lease

In his second issue, Nash complains
that Garden City’s termination notice failed to state the grounds for eviction
with sufficient specificity to enable Nash to prepare a defense.  Specifically, Nash argues that the notice’s
failure to allege specific dates, times, places and person’s involved renders
the notice fatally defective.  If we
conclude the notice was deficient, Nash further urges us to overrule prior
precedent subjecting such failure to give adequate notice to harm analysis or,
alternatively, to conclude in this case that Nash was harmed.  Garden City responds that its notice was
sufficiently detailed and that, in any event, Nash waived this complaint by not
raising in the trial court.  We agree
with Garden City.    

1.     Applicable law

Title 24, section 247.4 of the Code
of Federal Regulations sets forth certain lease termination notice requirements
applicable to Section 8 housing. 
Relevant here: “The landlord’s determination to terminate the tenancy
shall be in writing and shall . . . state the reasons for the landlord’s action
with enough specificity so as to enable the tenant to prepare a defense.” 24
C.F.R. § 247.4(a)(2).  Unless new grounds for eviction come to light
after the termination notice is sent, the landlord is limited to reliance only
“on grounds which were set forth in the termination notice” in any judicial
eviction proceeding.  24 C.F.R. §
247.6(b).  

2.     Discussion       

Garden City’s notice of lease
termination states (1) the individual allegedly engaged in wrongdoing (Nash),
(2) the objectionable behavior (hiring residents for sexual favors), (3) when
and how Garden City became aware of the objectionable behavior (the meeting
with Nash on September 16, 2009), and (4) the names of the witnesses to Nash’s
admission forming the basis of the eviction. 
This notice provided much more detail than the notices found
insufficient in the two cases Nash claims are analogous.  Nealy
v. Southlawn Palms Apartments, 196 S.W.3d 386, 391(Tex. App.—Houston [1st
Dist.] 2006, no pet.) (notice stated only “[o]wner desired possession” and
“[u]n-desirable tenant behavior”); Moon
v. Spring Creek Apartments, 11 S.W.3d 427, 433 (Tex. App.—Texarkana 2000,
no pet.) (notice stated that tenant’s 3-year old grandson “endanger[ed the]
welfare of  other tenants”).  Nash does not articulate in his brief how
Garden City’s notice was insufficient to apprise him of the necessary facts to
prepare his defense.  And, while Nash’s
attorney successfully objected to the introduction of evidence about wrongdoing
outside the scope of the termination letter at trial,[2] Nash never brought to the
trial court’s attention any objection about the actual form of the notice, or
that the notice was too vague to adequately put him on notice of the ground
under which the court found lease termination proper, i.e., Nash’s hiring other residents to engage in sexual activity.  Tex.
R. App. P. 33.1.  We overrule
Nash’s second issue.

CONCLUSION

        We
affirm the trial court’s judgment.  

 


 

 

   
         

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Sharp and Brown.

 











[1]           White is identified elsewhere in the
record as “Sonia Ross.” 





[2]
          Nash’s attorney successfully
argued to exclude evidence related to allegations about Nash possessing child
pornography in his apartment, and testimony elaborating on the attempts at
luring children into his apartment, because these grounds were not included in
Garden City’s termination notice.