**Affirmed, in Part, and Reversed and Rendered, in Part, and Memorandum Opinion filed December 15, 2011.**

In The

# Fourteenth Court of Appeals

### NO. 14-10-00585-CV

**MERRILL PIERRE, Appellant**

**V.**

**KEITH OLLIVIERRE, MARILYN OLLIVIERRE, AND SUSAN OLLIVIERRE, Appellees**

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2007-33188**

## MEMORANDUM OPINION

Appellant Merrill Pierre appeals the trial court's judgment entered in favor of appellees Keith Ollivierre, Marilyn Ollivierre, and Susan Ollivierre on Pierre's breach of contract claim for the sale of property and the Ollivierres' counterclaims and attorney's fees. We affirm, in part, and reverse and render, in part.

### BACKGROUND

Keith Ollivierre and Marilyn Ollivierre owned a house located at 8606 Honeysuckle, Highlands, Texas. On March 28, 1994, Keith and Marilyn gave Keith's

sister Susan Ollivierre power of attorney regarding the house.[1]  In 1998, Merrill Pierre, the nephew of Keith and Marilyn, moved into the house.  Merrill claims that he had an agreement with Keith and Marilyn that in exchange for making the remaining mortgage payments on the house, they would give him the house once the mortgage was paid off.

In 2002, Merrill attempted to refinance the house even though he did not own it.  Merrill acknowledged at trial that he did not own the house in 2002.  However, Merrill claimed that he did not go through with the refinancing in 2002 because it would have required another thirty-year mortgage, not because he did not own the house.

Merrill originally made payments directly to the mortgage company.  However, beginning in 2003, mortgage payments were drafted directly from Keith and Marilyn's bank account because Merrill's payments to the mortgage company were not timely.  Merrill then made payments directly to Keith and Marilyn.

In 2006, Merrill again tried to refinance the house.  In July 2006, Merrill claims he wrote Keith and Marilyn requesting that they send him a sales contract with the payoff amount and the deed "when the pay-off is done."  Merrill never received the pay-off information, sales contract, or deed.  Merrill never obtained the loan.  He claimed it was because he did not follow through on his part regarding the loan, not because he did not receive the requested information or documents.

In January 2007, Susan's daughter died, and leaving Susan with the care of her three young grandchildren, ages five months, six years, and seven years.  In March 2007, Susan, under the power of attorney, purchased the house for $8,459.27—the amount remaining on the mortgage—even though the house was valued at $80,000 to $90,000.

---

[1] Keith and Marilyn had given the power of attorney to Keith and Susan's sister Rosanne Mitchell in 1986.  Keith gave Susan the power of attorney in 1994 because Rosanne no longer wanted the property.  On November 26, 1994, Keith and Marilyn gave a power of attorney to Veronica Pierre because Susan was moving to Trinidad.  Keith and Marilyn did not revoke Susan's power of attorney.  Neither power of attorney gave exclusive power to Veronica or to Susan to handle transactions concerning the house.  Veronica passed away in July 2000.

Keith and Marilyn then conveyed the property to Susan by a general warranty deed dated March 25, 2007. After Merrill refused to vacate the house, Susan sought to evict him.

On May 31, 2007, Merrill filed an original petition and application for a temporary and permanent injunction. Seeking specific performance, Merrill alleged that Keith and Marilyn breached their oral agreement to give him the house once he had paid off the mortgage, and that Susan tortiously interfered with his agreement with Keith and Marilyn. Merrill also alleged, in the alternative, a fraud claim against Keith and Marilyn, claiming that they had no intention of selling the property to him at the time that they agreed to sell, and a conspiracy claim against appellees.[2]

Merrill also sought temporary and permanent injunctions against Susan to prohibit her from evicting him from the house. On July 9, 2007, the trial court signed the temporary injunction awarding Merrill possession of the house "as long as he continues to make monthly payments as hereinafter described." The trial court ordered Merrill to "deposit the sum of [$]613.00 per month until the trial of this case into the Court registry . . . ." Appellees filed a counterclaim for damages to the house and yard caused by Merrill and for attorney's fees.

Merrill stopped making the $613.00 payments into the registry of the court in July 2009, because at that point, according to Merrill, the mortgage had been paid off, and his agreement was to pay off the mortgage in exchange for the house. Therefore, Merrill made no more payments into the registry of the court after July 2009.

---

[2] Merrill also sought (1) to have the deed to Susan set aside and Keith and Marilyn ordered to transfer title to Merrill conditioned upon Merrill fulfilling his remaining obligations, or that Susan be ordered to transfer the property to Merrill; (2) a declaratory judgment as to which defendant should be entitled to the remaining payments on the balance of Merrill's obligation; and (3) attorney's fees on his breach of contract claim and under the Declaratory Judgment Act.

After a bench trial, the trial court awarded Susan $12,000[3] for damages to the house and property, $23,907 for unpaid rent, and $13,200 for attorney's fees.

In its findings of fact, the trial court found the following:

1.     That Merrill Pierre never had a written or oral agreement with Defendant property owners Keith Olivierre [sic] and/or Susan Olivierre [sic] to perform improvements to the real property in exchange for an interest in the property.

2.     That Merrill Pierre never had a written or oral agreement with Defendant property owners Keith Olivierre [sic] and/or Susan Olivierre to purchase the subject property.

3.     That Merrill Pierre performed no improvements to the subject property.

4.     That Merrill Pierre caused significant damage to the interior structure of the house located on the subject property.

5.     That Merrill Pierre cause significant damage to the exterior yard and fence located on the subject property.

6.     That Merrill Pierre has failed to make eleven (11) of the Court ordered payments to the registry of the Court: an amount totaling $6,743.00.

7.     That Merrill Pierre brought this lawsuit in bad faith.

8.     That Defendants have incurred reasonable legal fees in the amount of $13,200.00 defending this lawsuit and prosecuting the underlying Justice of the Peace lawsuit.

9.     That the remedy Merrill Pierre seeks is an equitable remedy.

10.     That there is no corroborating evidence to support Merrill Pierre's claim.

11.     That Merrill Pierre sought to "re-mortgage" the house in issue in 2002.

---

[3] The amount of damages was calculated by subtracting the value of improvements made by Merrill from Susan's costs to repair damage to the property.

12. Merrill Pierre sought to "re-mortgage" the house in issue again in 2005 [sic].[4]

13. That neither Keith Olivierre [sic] nor Susan Olivierre [sic] gave Plaintiff permission to refinance the house.

14. The three letters introduced into evidence by Plaintiff do not corroborate Plaintiff's contentions as to the terms, the price, the time, the interest rate, the property description or closing date in any of the three letters Plaintiff produced for trial [sic].

The trial court made the following conclusions of law:

1. That the Statute of Frauds requires real estate transactions to be in writing.

2. Merrill Pierre has sought the equitable relief of partial performance to avoid the requirement of a writing.

3. That Merrill Pierre has "unclean hands" as the term was defined in *El Paso National Bank v. Southwest Numismatic Investment Group, Ltd.*, 548 S.W.2d 942, 949 (Tex. [Civ] App.—El Paso 1997, no writ) citing 31 C.J.S. Estoppel §75 (1964).

4. That Merrill Pierre owes Defendants $12,000.00 for damages done to the interior and exterior of the subject property.

5. That Merrill Pierre owes Defendants $23,907.00 for back rent on the subject property.

6. That Merrill Pierre owes Defendants $13,200.00 for reasonable legal fees incurred in defending this lawsuit and for prosecuting the underlying Justice of the Peace lawsuit.

9. That Merrill Pierre has no ownership in the subject real property.

10. That Merrill Pierre is ordered to vacate the premises within ten (10) days of the signing of these Conclusions of Law.

On April 27, 2010, Merrill filed a motion for new trial and motion to modify the judgment, claiming that the judgment did not dispose of all claims and, therefore, was not

---

[4] The evidence at trial showed that Merrill attempted to refinance the house in 2006.

final. On June 16, 2010, the trial court denied Merrill's motion for new trial. On May 28, 2010, Merrill requested additional findings of fact to support the award for unpaid rent and the award of damages and, on June 22, 2010, the trial court denied Merrill's request.

## ANALYSIS

### Oral Agreement

In his first issue, Merrill challenges the legal and factual sufficiency of the evidence to support the trial court's finding of fact that he "never had a written or oral agreement" with Keith and/or Susan to purchase the property.

Findings of fact entered in a case tried to the court are entitled to the same force and dignity as a jury's verdict on jury questions. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards in reviewing the legal and factual sufficiency of the evidence supporting the trial court's fact findings as we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

When an appellant complains of the legal sufficiency of the evidence supporting an adverse finding on which the appellant had the burden of proof, he must show the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing a "matter of law" challenge, we must first examine the record for evidence supporting the finding, and then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We sustain the issue only if the contrary position is conclusively established. *Id.*

When an appellant attacks the factual sufficiency of an adverse finding, he must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Id.* We must consider and weigh all the evidence and can set aside the finding

6

only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

Unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694 696 (Tex. 1986).

We review the trial court's conclusions of law de novo. *Busch v. Hudson & Keyse*, 312 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We review conclusions of law to determine whether the conclusions drawn from the facts are correct. *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). Even if we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *Busch*, 312 S.W.3d at 299. We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

Merrill complains that he never claimed that he had a written agreement with Keith and Marilyn to purchase the house. Instead, Merrill claims that he had an oral contract to purchase the property from Keith and Marilyn.

Merrill contends that his testimony, along with the testimony of his father, Michael Pierre, and his sister, Michelle Alexander, establishes the existence of the oral agreement with Keith and Marilyn to purchase the house for payment of the remaining mortgage payments. Michael Pierre testified that "[Merrill] did tell me about an agreement, and there was some sort of problem between some back, you know missed payments or whatever the case may be. And he agreed to send his payments straight to Marilyn or whatever the case may be. I didn't go into much detail with that."[5] Michelle

---

[5] While Merrill claims that Michael Pierre is a disinterested witness, testimony showed that Michael asked Keith for a power of attorney on the house when Michael's wife Veronica Pierre died, but Keith refused the request.

7

Alexander testified that she was aware of the agreement Merrill had with Keith and Marilyn, but she never talked to Keith and Marilyn about it.

Merrill argues that two letters to him from Marilyn confirm that there was an agreement to purchase the house upon completion of the mortgage payments. A review of those two letters from Marilyn shows that they do not support Merrill's position. In those letters, Marilyn merely informs Merrill of the increased amount of the mortgage payment and increase in taxes and homeowners insurance.[6] There is nothing to show that the payments Merrill was making were anything more than rental payments as part of a lease agreement.

Merrill also relies on a letter, dated July 1, 2006, he wrote to Keith and Marilyn asking for the pay-off amount as evidence corroborating his claim of an oral agreement. Merrill's letter states:

> Could you send me a sales contract with the payoff amount so I can have some kind of paper work when I do pay off that amount. I'm hoping you can help me so we can both move on, and I can get the house in my name after the pay off amount is complete. . . . [w]hen you will [sic] send me the deed when the payoff is done. I'm really trying to get this done this month of July.

There is no reference to the alleged oral agreement in the letter. Merrill produced a copy of this letter at trial, but never showed that Keith and Marilyn ever received this letter. In 2006, Merrill attempted to obtain a loan on the house. Susan testified that a loan officer contacted Keith and Marilyn about that loan in 2006. According to Susan, Keith and Marilyn had not given Merrill permission to apply for a loan on the house and were upset. Susan explained, "[T]he only reason they were contacted is because [the loan officer] was going to prepare this loan and realized that [Merrill] had no legal right to the property. So they, in fact, try to contact her and see—they asking her if she could turn

_____

[6] One of the letters states, "Please find enclosed your tax info. Also please note the mortgage payments have increased to $613.00 as of March |06." The other letter states, "Payment increased due to shortage in escrow account of $418.68 because of increase in taxes from $1860 to 2156.00[.] [A]lso homeowners insurance went up from $416.00 to $478.00."

8

over the property to him and she plainly said no." Merrill claims that he did not get the loan because he did not follow through with his part of the loan; it was not that he did not receive the documents or payoff information.

Merrill claims that, because neither Keith nor Marilyn testified, there is not a scintilla of evidence contradicting his testimony or the testimony of Michael Pierre and Michelle Alexander concerning the existence of an oral agreement.[7] However, it was Merrill's burden to establish the existence of the agreement with Keith and Marilyn by a preponderance of the evidence. It is not necessary to have testimony from both parties before the fact finder may disbelieve either. *City of Keller v. Wilson*, 168 S.W.2d 802, 819–20 (Tex. 2005). The fact finder may disregard even uncontradicted and unimpeached testimony from disinterested witnesses. *Id.* at 820. Moreover, circumstantial evidence in this case supports the trial court's finding that there was no oral agreement between Merrill and Keith and Marilyn.

Susan testified that there was no discussion whereby Merrill believed he was going to be deeded the house once final payments on the mortgage were made. Susan further explained, "Every time [the] property changed hands, we always have a power of attorney to combat that." Moreover, Keith and Marilyn conveyed the property to Susan by general warranty deed. This supports the trial court's finding that there was no agreement for Keith and Marilyn to transfer the property to Merrill.

Merrill claims that evidence that he tried to refinance the mortgage and that his payments were late does not contradict the testimony that he had an agreement with Keith and Marilyn. In 2002 and in 2006, Merrill attempted to refinance the house, even though he did not own it. Merrill claimed that Keith told him he could refinance the house or pay it off. Merrill explained at trial that he did not obtain the loan in 2002 because he would have had to take a thirty-year mortgage on the house—it was not because he did

---

[7] Appellees' counsel stated at the beginning of the trial that Keith, who lives in California, was recovering from cancer treatment.

9

not own the house. Merrill testified that Susan helped him try to refinance in 2002. However, Susan testified that she told Merrill that he could not get a loan because he did not own the house. With regard to Merrill's 2006 attempt to refinance the house, Merrill claimed that Keith and Marilyn were "fine with it" and were not "mad about it." Susan, however, testified that Keith and Marilynn were upset about the attempted 2006 transaction and did not give Merrill permission to refinance the house. Evidence that Merrill attempted to refinance the house without Keith and Marilyn's knowledge or permission undermines his claim that he had an oral agreement to buy the house and supports the trial court's finding that there was no such oral agreement.

As the trier of fact in a bench trial, the court judges the witnesses, assigns the weight given to their testimony, and resolves any conflicts or inconsistencies in the testimony. *Buckey Retirement Co., LLC, Ltd. v. Bank of Am., N.A.*, 239 S.W.3d 394, 399 (Tex. App.—Dallas 2007, no pet.). Here, Merrill has not shown that the evidence conclusively established the existence of an oral agreement with Keith and Marilyn or that the trial court's finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

To avoid the statute of frauds, Merrill seeks to establish the equitable remedy of partial performance.[8] *See Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.) (remedy of partial performance is an equity-based exception to the statute of frauds). "[C]ontracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). To establish partial performance, a party must show: (1) payment of consideration, (2) possession of the property by the buyer; and (3) permanent and valuable improvements by the buyer with

---

[8] *See Ward v. Ladner*, 322 S.W.3d 692, 700 (Tex. App.—Tyler 2010, pet. denied) (op. on reh'g) (stating contract for the sale of land is governed by the statute of frauds (citing TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4))).

the consent of the seller, or without such improvements, other facts demonstrating that the buyer would be defrauded if the agreement were not enforced. *Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex. 1992); *Lovett v. Lovett*, 283 S.W.3d 391, 393–94 (Tex. App.—Waco 2008, pet. denied). These steps are seen as sufficient evidence of an agreement because they provide affirmative corroboration of the agreement by parties to the agreement. *Boyert*, 834 S.W.2d at 63.

Merrill contends evidence demonstrating that he was living in the house, paying the mortgage, insurance, and taxes, and making improvements with Keith and Marilyn's approval establishes his entitlement to partial performance. However, because the evidence is legally and factually sufficient to support the trial court's finding that there was no oral agreement for the purchase of the house, we need not address Merrill's assertion that he established partial performance.

We overrule Merrill's first issue.

## Abuse of Discretion

In his second issue, Merrill asserts that the trial court abused its discretion in making certain findings of fact because they are not relevant to whether there was an oral contract for the sale of the house, but, instead, such findings show the trial court's prejudice and ill will toward Merrill.[9] We review the trial court's findings of fact for legal and factual sufficiency of the evidence. Because Merrill does not challenge those findings of fact for legal and factual sufficiency of evidence, we do not address Merrill's contentions. Even if Merrill challenged the legal and factual sufficiency of those findings of fact, he has not adequately briefed such challenges. *See* TEX. R. APP. P. 38.1.

[9] Merrill complains that the trial court abused its discretion in making the following findings of fact: no 6—that Merrill failed to make eleven of the court ordered payments to the registry of the court in an amount totaling $6,743; no. 7—that Merrill brought this lawsuit in bad faith; no. 9—that the remedy Merrill seeks is an equitable remedy; no. 11—Merrill sought to "re-mortgage" the house in 2002; no. 12—that Merrill sought to "remortgage" the house in 2005; no. 13—that neither Keith nor Marilyn gave Merrill permission to refinance the house; and no. 14—that the three letters introduced into evidence by Merrill do not corroborate Merrill's contentions as to the terms, price, time, interest rated, property description, or closing date.

11

Merrill further complains that conclusion of law no. 1—that the statute of frauds requires a real estate transaction to be writing—is not applicable in this case, and conclusion of law no. 2—that Merrill sought the equitable relief of partial performance to avoid the requirement of a writing—is only a partial statement of the applicable law. The statute of frauds' requirement that a contract be in writing is applicable to this case. As addressed above, we have concluded that the evidence supports the trial court's finding that no oral contract existed, and it is not necessary to address Merrill's assertion that he established the elements of partial performance.

Merrill also complains that conclusion of law no. 3—that Merrill has unclean hands as that term is defined in *El Paso National Bank v. Southwest Numismatic Investment Group*, 548 S.W.2d 942, 949 (Tex. Civ. App.—El Paso 1977, no writ)—is not applicable because the clean hands doctrine is not applicable to this case.[10] As explained under Merrill's first issue, Merrill did not sustain his burden to establish the existence of an oral contract and, therefore, it is not necessary to address whether he established the elements of the equitable remedy of partial performance.

In light of our holding that the evidence is legally and factually sufficient to support the trial court's finding that there was not an oral agreement between Merrill and Keith and Marilyn, we need not address whether the clean hand doctrine precludes Merrill from recovering under the equitable remedy of partial performance.

We overrule Merrill's second issue.

---

[10] The court, in *El Paso National Bank*, explained the clean hands doctrine as it applied to equitable estoppel:

> "There is, in the very nature of the [equitable estoppel] doctrine, some element of the maxim that one must come into a court of equity with clean hands. . . . A person may not predicate an estoppel in his favor on, or assert such estoppel for the purpose of making effective, obtaining the benefit of, or shielding himself from the results of, his own fraud, and, similarly, he may not do so with respect to his own dereliction of duty, violation of law, wrongful act, or other inequitable conduct in the transaction in question . . . ."

*El Paso Nat'l Bank*, 548 S.W.2d at 949 (quoting 31 C.J.S. § 75 (1964)).

**Fraud**

In his third issue, Merrill points out that there is no finding as to whether it would be a fraud not to enforce the agreement. Merrill argues that there can be no presumed finding on fraud where the trial court found there was no agreement because it was not an omitted unrequested element of the findings of fact supporting the judgment. Merrill, therefore, asserts that if it is determined that the judgment cannot be upheld on the issue of whether there was an agreement, then the trial court must determine whether it would be a fraud on Merrill not to enforce the agreement. As addressed above, we have overruled Merrill's first issue challenging the sufficiency of the evidence to support the trial court's finding that there was no oral agreement to purchase the house.[11]

We overrule Merrill's third issue.

**Unpaid Rent**

In his fourth issue, Merrill complains that there are no pleadings to support an award of rent to appellees. In the final judgment, the trial court awarded Susan "$23,907 for unpaid rent calculated by the amount of month rent, ($613.00) multiplied by the number of months for which Plaintiff has not paid rent since he instituted this lawsuit, (39)." The trial court did not make any findings regarding rent. Merrill timely filed a request for additional findings of fact regarding rent.[12] *See* TEX. R. CIV. P. 298 ("After the court files original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions."). The trial court denied Merrill's request for additional findings of fact.

---

[11] *See Exxon Corp.*, 82 S.W.3d at 439 ("[C]ontracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud.").

[12] Merrill requested a finding on rent as follows: "The Court awarded rent to Defendant Susan Ollivierre but did not issue findings of fact as to what facts support the award such as what caused Plaintiff to be liable for rent, for what period of time, and the amount of monthly rent and how the monthly rent was derived."

13

Merrill also argued in his motion for new trial that the judgment for rent was not supported by the pleadings. The trial court denied his motion for new trial.

The primary function of pleadings is notify the opposing party of one's claims and defenses, as well as notice of the relief sought. *In re Park Memorial Condominium Ass'n*, 322 S.W.3d 447, 450 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). A trial court cannot enter judgment on a theory of recovery not sufficiently set forth in the pleadings or otherwise tried by consent. *Herrington v. Sandcastle Condo. Ass'n*, 222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see also* TEX. R. CIV. P. 301 (providing that the judgment shall conform to the pleadings). A review of appellees' amended answer and original counterclaim—appellees' live pleading at trial—reflects that they did not plead a claim for rent. Instead, appellees pleaded a claim for damage to the property.

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67. To determine whether an unpleaded issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Haas v. Ashford Hollow Cmty. Improvement Ass'n*, 209 S.W.3d 875, 883–84 (Tex. App.—Houston [14th Dist.] 2006, no pet.). A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *Id.* at 884. "The doctrine of implied consent is intended to cover the 'exceptional case' in which the record as a whole clearly shows the parties tried the unpleaded issue." *Herrington*, 222 S.W.3d at 102–03.

Appellees contend that Merrill was required to pay his monthly "rent" into the registry of the court during the pendency of the lawsuit pursuant to the temporary injunction, with the prevailing party to be entitled to withdraw those funds at the conclusion of the litigation. Appellees, therefore, argue that Merrill breached the rental

14

agreement and terms of the temporary injunction when he stopped making rental payment into the registry of the court.

The temporary injunction order states that it was awarding Merrill the exclusive use and possession of the property "while the case is pending as long as he continues to make monthly payments" and that Merrill "shall deposit the sum of $613.00 per month until the trial of this case into the Court registry." The temporary injunction does not reflect that Merrill was to pay "rent."

Appellees further claim that Merrill admitted at trial that he breached the rental agreement and violated the temporary injunction by not making all the required payments. However, the testimony merely reflects that Merrill admitted that he did not make payments into the registry of the court after July 2009, not that he did not pay "rent." At trial, Merrill denied that the payments he made were for "rent." The testimony at trial regarding the payments Merrill made to Keith and Marilyn reflected the parties' positions at trial with regard to whether Merrill had an agreement with Keith and Marilyn to purchase the house upon completion of paying off the mortgage. *See Herrington*, 222 S.W.3d at 103 (finding no evidence that the parties tried the issue of reasonable rent by consent, and appellant's counsel objected to the only reference to reasonable rent in the record, which occurred during closing argument).

We sustain Merrill's fourth issue.

### Attorney's Fees

In his fifth issue, Merrill contends that the trial court erred in awarding appellees' attorney's fees because such fees are not authorized by statute or contract. Appellees contend that attorney's fees were awarded for Merrill's breach of the rental contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008) (providing that a person may recover reasonable attorney's fees if the claim is for an oral or written contract). Because we have concluded that appellees did not plead a cause of action for breach of a rental agreement and that such an action was not tried by consent, appellees may not

15

recover attorney's fees.  *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009) ("To recover under [section 38.001(8)], a litigant must do two things: (1) prevail on breach of contract claim, and (2) recover damages.").

We sustain Merrill's fifth issue.

**CONCLUSION**

We conclude that the trial court erred by awarding Susan damages for unpaid rent and attorney's fees related to breach of a rental agreement.  Therefore, we reverse those portions of the judgment awarding Susan $23,907 for unpaid rent and $13,200 in attorney's fees.  We affirm the remainder of the judgment.

Accordingly, we affirm, in part, and reverse and render, in part.


/s/         Sharon McCally
                Justice

Panel consists of Justices Brown, Boyce, and McCally.