**SECURITY LIFE INSURANCE COMPANY, Appellant,**

**v.**

**EXECUTIVE CAR LEASING COMPANY, Appellee.**

**No. 7908.**

Court of Civil Appeals of Texas.

Texarkana.

Oct. 8, 1968.

Rehearing Denied Nov. 5, 1968.

Bruce Youngblood, Harless, Bailey & Youngblood, Dallas, for appellant.

Wayne A. Melton, Melton, Morgan & Curtis, Dallas, for appellee.

CHADICK, Chief Justice.

This litigation was instituted by Executive Car Leasing Company of Dallas as a suit to collect a balance due under the terms of a car rental contract. An answer and cross-action was filed by Security Life Insurance Company. At the conclusion of the suit judgment favorable to the leasing company was rendered.

In December, 1962, the parties entered into a written contract labeled "Automobile Lease Agreement". The terms of the instrument put Security Life Insurance Company in possession of a new 1963 Buick Riviera automobile. Security Life accepted and retained possession of the car for one year and ten months, and at surrender of possession to Executive Car, the vehicle was sold for $2,476.32. On the basis of Executive Car's calculations and interpre-

tation of the contract Security Life was indebted to it in the sum of $933.73. Security Life denied owing such amount and defended on the theory (advanced in both its answer and cross-action), that the written agreement was a conditional sales contract in the guise and form of a lease; and that under the contract's terms Security Life was required to and did pay illegal and usurious interest to Executive Car and prayed judgment accordingly.

■ The intention of the parties determines the nature of the contract, that is, whether the agreement is a lease or a conditional sale. Purity Creamery Co. v. Hays, 4 S.W.2d 1056 (Tex.Civ.App. Waco 1928, no writ); 50 Tex.Jur.2d Sales, § 69; 8 Tex.Jur.2d Bailment, § 2; and 7 Tex. Law Review 329. Numerous approaches or tests have been employed by courts in an effort to determine the parties' intentions in making agreements similar to this under examination. The cases employing the tests fall generally into three broad classifications: (1) When an option to purchase is embodied in the agreement the option is usually regarded as indicative of an intent to make the transaction a conditional sale rather than a lease; (2) When the contract obligates the lessee to buy a chattel, or pay an amount equal to its value, the transaction is frequently considered to have the character of and held to be a sale; (3) When the lessee has an option at the end of the rental term to buy the chattel and apply installments on the purchase price, the amount of the installment is considered a decisive factor; if the installments are unreasonable as rent, or if they substantially exceed the original value of the chattel, the transaction is held to have the characteristics of a sale rather than a lease. Security Life's argument and authorities cited seem to indicate that it relies on cases and the reasoning of the second category. The following quotation from Security Life's brief contains the essence of its argument, to-wit:

"A true lease is a bailment, but the agreement in this case has the characteristics of a conditional sale (financed at excessive interest rates). In effect, it is a contract which requires the 'lessee' to buy the car. The amount of 'rental' which it requires the 'lessee' to pay is as much as the value of the article 'rented', and courts uniformly hold such a transaction to be, in reality, a conditional sale rather than a lease, First National Bank of Ft. Smith v. Phillips, 261 F.2d 588 (5th Cir., 1958). The 'lease' agreement absolutely binds the 'lessee' to pay the 'lessor' a 'capitalized cost' of $5,050.00, plus additional amounts for so long as the $5,050.00 remains unpaid. $5,050.00 was equivalent to the market value of the car at the time the 'lease' was signed. * * * The additional amounts to be paid under it are the equivalents of interest payments."

The parties stipulated the facts in the trial court and the trial judge heard the case without intervention of a jury. On several occasions in oral argument counsel for the parties referred to the contractual instrument as a standard form in the car rental industry. The instrument is shown in the record by a poorly reproduced copy which does not lend itself to further reproduction, but be this as it may, the instrument is much too long to be copied as a part of this opinion. The agreement provided for an initial twelve month minimum rental term. Security Life was obligated to pay monthly rentals of $148.00 during the twelve month term in any event, and as long thereafter as the car remained in its possession. Out of each monthly rental payment $87.40 was to be credited to a depreciation reserve account. Capitalized cost of the automobile was agreed to be $5,050.00. Title to the automobile at all times remained in Executive Car, with no obligation to sell to Security Life, and the agreement accorded Security Life neither a title nor option to purchase. Security Life was at liberty to terminate the lease at any time by returning the automobile to Executive Car, although such surrender would not extinguish liability for payment of monthly rentals for the primary twelve

months term, nor for payment of any sum due under other provisions of the contract. The contract contained a formula for determining Security Life's liability to Executive Car that would or might accrue in addition to the obligation to pay monthly rentals. It was contracted that on surrender of the car it would be sold and the sale proceeds combined with the total of the accumulated reserve account. The total of the two items would be balanced with the agreed capitalized cost of the vehicle. If the capitalized cost was the greater, Security Life agreed to pay the difference. If the capitalized cost of the vehicle was the lesser, Executive Car was obligated to refund the difference to Security Life. This formula assured Executive Car a recovery of the capitalized cost of the automobile and made Security Life's total liability under the contract depend upon the amount of accumulated reserve and the vehicle's sale price.

■ Though it is of little moment, the instrument describes the transaction as a lease, but of more than passing significance the stipulated facts show that the parties treated it as a lease in their internal accounting procedures. There is no evidence that employees of the parties approached each other on any basis other than in an effort to effect a rental agreement. The absence from the written contract of any obligation on the part of Security Life as lessee to buy the vehicle from Executive Car, or on the part of Executive Car, as lessor to sell the vehicle to Security Life, or to transfer title to Security Life or its nominee at any time under any circumstances, regardless of the period of time the lease was permitted to run or the amount of rentals paid, is very persuasive that the parties did not intend the agreement to be a sale or a conditional sale of the Buick automobile by one to the other.

The contract specifically provides that the vehicle would be sold upon its surrender to Executive Car. Sale of the vehicle was a practical method of establishing its value.

The sale was not the objective, purpose, or primary end that motivated the parties to enter into the agreement. A mere sale itself does not appear to benefit either party except as the proceeds thereof affect the accounting between them. This sale is important only as an incident of the accounting procedure. As long as rentals were paid or until the vehicle was surrendered, a sale was not required. The trial court's conclusion that the agreement was a rental contract finds support when the instrument and all stipulated facts and circumstances are considered.

The three principal cases cited in support of appellant's conditional sales theory may be distinguished on several grounds. Over-all, each of the cited cases deals with the right of strangers who have acquired equities that would be affected by the nature of contracts before the courts. In other words, in each instance the lawsuit is not between the parties to the contract but between one such party and a stranger to the agreement. Here the controversy is between parties to the contract where the rights of third parties have not intervened. A further general distinction is that in each case the court found the so-called lessee had the right, or option, to buy or take title to the lease property and apply rental payments theretofore made upon the purchase price. Such provision was held to show the intention of the parties to consummate a sale rather than a lease; the contract under review does not afford the lessor any such right or evidence such intent. The authorities referred to are next discussed.

In Knittel v. Cushing, 57 Tex. 354 (1882), the written agreement contained language which might be construed as either a rental or the sale of a piano; whether it would be rental or sale depended upon the time and amount of payments made. The incongruity of the contractual provisions was embellished by failure to make payments in conformity with either the rental or the sale provision. The contract was not recorded as a mortgage.

After expressing doubts as to the validity of the instrument as a contract because of its equivocal nature, the court reached the conclusion that the instrument should be construed as a sale for reason noted in the paragraph above. Decision was also grounded in part upon public policy that discourages secret liens and claims on personal property.

Beckwith Machinery Co. v. Matthews, 190 Md. 182, 57 A.2d 796 (1948) deals with an instrument captioned "Agreement for Rental of Machinery". The opinion contains this language, to-wit:

"We find the following facts. The parties originally wanted to enter into a conditional sales contract for the machinery. This could not be done because of the Federal regulation requiring a down payment of at least 20% of the value of the machinery. They, therefore, resorted to a lease, with an option to purchase. The monthly rent charged, of $579.00, is greatly disproportionate to the value of the machinery, for in the eight months 56% of the value of this machinery was charged as so-called rent. Testimony shows the life of the greater part of this machinery was eight years. The fact that the lessor allowed the value of returned parts of this machinery to be credited on the rent is inconsistent with a lease. The fact that 56% of the value of the machinery was to be paid as rent before the option could be exercised, was so great as to virtually compel the lessee to buy. No solvent operators would take such a loss, and the only alternative was to buy. From these facts we are of opinion that the parties intended this 'Agreement of Rental of Machinery' to be a sale."

This statement evidences a factual situation entirely different from the facts of this case on appeal.

First National Bank of Fort Smith, Ark. v. Phillips, 261 F.2d 588, was concerned with a "rental-purchase agreement". The contract required a cash down payment and an agreement to pay an additional sum in 28 equal monthly installments, with the understanding that when the last installment was paid title would be transferred by a bill of sale. The contract contained this language:

"* * * above machinery furnished by lessor under 36 monthly rental contract, last eight months rental payable in advance. Bill of sale to be issued at end of contract. Monthly payments to be made as per schedule 'A' attached."

The so-called lessor's case was bottomed on the premise that the so-called lessee did not agree to pay the sum of $11,800.00, or any other price for the machinery. The court disagreed with the lessor and adopted this statement from the brief of the appellee in the case, to-wit:

"* * * not only does the agreement expressly contain an agreement to pay the full purchase price, the entire transaction evidences an intention to so purchase."

Again the case and its facts are materially dissimilar to this under review.

The agreed statement of fact, dated December 11, 1967, in the appeal record contains the following provision:

"In the prosecution of its suit upon the contract herein, EXECUTIVE has incurred reasonable attorneys fees; and in the prosecution of its counterclaim herein for the recovery of sums alleged to be interest paid upon an alleged usurious contract, SECURITY has incurred reasonable attorneys fees, for which the opposing party may be liable upon recovery by either of them. By agreement both parties request the Court to hear evidence, and to make a finding of fact, upon the single issue of the amounts of such reasonable attorneys fees incurred by each party for which the opposing party would be liable, if liable at all."

A certificate signed by the presiding judge, dated February 29, 1968, recites that on the

issue of reasonable attorney fees he found that each party incurred reasonable fees in the amount of $3,250.00 in the prosecution of their respective claims. The certificate also provided that the prevailing party, which impliedly had not been determined at the time, should recover such amount subject to a remittitur in the sum of $450.00, if no oral arguments were heard in the Supreme Court, and in the further sum of $300.00 if no application should be made for writ of error before that court, and in the sum of $1,000.00 if no appeal be perfected to the Court of Civil Appeals. Under a notation "Approved for Entry" counsel for each party signed the certificate. The judgment decreed the following with reference to attorney fees, to-wit:

"That the plaintiff EXECUTIVE CAR LEASING COMPANY recover of and from the defendant SECURITY LIFE INSURANCE COMPANY as reasonable attorney's fees the sum of $3,250.00 provided, however, that SECURITY LIFE INSURANCE COMPANY shall be entitled to a remittitur in the sum of $450.00 if no oral arguments be heard before the Texas Supreme Court, and in the sum of $300.00 if no application be made for writ of error before the Texas Supreme Court, and in the sum of $1,000.00 if no appeal be perfected to the Court of Civil Appeals, all awards of attorneys fees being taxed herein as costs, * * *."

Security Life attacks the award of attorney fees on several grounds, but the most tenable is that the decree is void for "uncertainty as to finality". Otherwise expressed, that as written the attorney fee provision of the judgment is not a final adjudication of the issue. Cooksey v. Jordan, 104 Tex. 618, 143 S.W. 141 (1912) is relied upon as authority for the proposition that the award lacked finality. In Cooksey, the trial court rendered "a judgment unconditional and in no manner contingent, for $150, and containing, in substance, a provision that, in the event an appeal was perfected, Huggins should recover the additional sum of $100". The court held the judgment for $150.00 attorney fee final, but that the provision for an additional hundred dollars was "unauthorized". But the opinion went on to declare the provision for an additional $100.00 fee did not invalidate so much of the judgment as the court had authority to render, that is, judgment for $150.00.

The doctrine of Cooksey is applicable here. A judgment, final in all respects, for an attorney fee of $3,250.00 is shown by the record. By a proviso the total of the fee is reduced by remittitur. If the remittitur casts doubt on the finality of the judgment there is no reason why it may not be disregarded for appeal purposes as in Cooksey. However, decision here should not be grounded on the Cooksey case alone. The background shown by the record, considered with the provisions of Texas Rules of Civil Procedure, 315, obligates Executive Car to file a remittitur consistent with the judgment of the court after the appeal is finally determined and before execution issues.

All of the appellant's points of error have been carefully examined and reversible error is not found. Accordingly, the judgment of the trial court is affirmed.