TOM BENSON CHEVWAY RENTAL & LEASING, INC., Appellant,

v.

Kenneth Wayne ALLEN et ux., Appellees.

No. 6718.

Court of Civil Appeals of Texas, El Paso.

Aug. 16, 1978.

Rehearing Denied Sept. 13, 1978.

Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., Carl Robin Teague, San Antonio, for appellant.

Bayne, Snell & Krause, Don Krause, San Antonio, for appellees.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is a suit under the Texas Consumer Credit Code and the Federal Truth-in-Lending Act involving the acquisition of an automobile by Appellees from Appellant. The trial Court, sitting without a jury, found violations of both Acts and awarded judgment to Appellees. The principal question involved is whether the two Acts apply to the transaction between Appellant and Appellees because of the nature of that transaction. We affirm the judgment of the trial Court.

Appellees, Kenneth Allen and wife, Dolores Allen, brought suit against Appellant alleging violations of the Truth-in-Lending Act, 15 U.S.C.A. Sec. 1601, et seq., Regulation Z, 12 C.F.R. Sec. 226.1, et seq., and Chapter 7 of the Texas Consumer Credit Code, Art. 5069–7.01, et seq., Tex.Rev.Civ. Stat.Ann. One Cliff Dowd, d/b/a Padgett's Used Cars, was also named as a party Defendant, and he defaulted. The trial Court entered judgment jointly and severally awarding Appellees judgment in the amount of $2,960.00 for violations of the Texas Consumer Credit Code, and $1,000.00 for violation of the Federal Truth-in-Lending Act and Regulation Z, plus $700.00 attorney's fees. The Court found that Appellant was entitled to possession of the car involved in the transaction. Cliff Dowd, d/b/a Padgett's Used Cars, does not appeal.

On February 10, 1976, Appellee, Kenneth Allen, entered into a written contract to purchase a 1975 Plymouth from Padgett's Used Cars. He paid $700.00 cash and also

executed two other instruments; their interpretation is involved here. All of the Appellee's dealings were with Padgett's Used Cars, but these two instruments are between Appellee and Tom Benson Chevway Rental and Leasing, Inc., being executed by them as well as Appellee. One of the instruments is entitled "Motor Vehicle Lease" and the other is entitled "Finance Lease Addendum," and the trial Court found these two instruments together to be the contract between Appellant and Appellee. Appellant asserts that this is a lease transaction, and the Texas Consumer Credit Code, the Truth-in-Lending Act, and Regulation Z do not apply. If these Acts are applicable, there were many violations of them, and Appellant does not contend otherwise. The question, then, is whether or not the Acts are applicable.

■ To invoke the Truth-in-Lending Act and Regulation Z, four conditions must be satisfied:

" * * * First, there must a 'creditor' —one who regularly extends or arranges for the granting of consumer credit. Second, the debtor must be a natural person. Third, the transaction must be a 'consumer credit transaction' consisting of three component characteristics: (1) it must be a credit transaction; (2) it must require the payment of a finance charge *or* be payable in more than four installments; and, (3) it must be conceived for a consumer or agricultural purpose. Finally, the credit extension must not come within the statutory exemptions * *." Boyd, "Consumer Law," 8 Tex.Tech.L. Rev. 1077 (1977).

Appellant contends that there is an absence of two of these controlling issues; that is, that the transaction between the Appellee, Kenneth Allen, and Appellant was not a consumer credit sale, and that the lessor was not a creditor. The trial Court found that the transaction between the parties was a "credit sale" as defined by Section 226.2(n) of Regulation Z, which states in part:

"(n) 'Credit sale' means any sale with respect to which consumer credit is ex-

tended or arranged by the seller. The term includes any contract in the form of a * * * lease if the * * * lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the * * * lessee * * * for no other or for a nominal consideration has the option to become * * * the owner of the property upon full compliance with his obligations under the contract."

■ On the same day that Appellee contracted for this automobile, the Appellant advertised it for sale in the newspaper for a price of $4,620.00. In addition to the $700.00 which Appellee paid to Padgett's Used Cars, the Lease Addendum instrument which he signed obligated him to pay to Appellant 36 monthly installments of $150.00 each. These installments totalled $5,400.00. This Finance Lease Addendum provided that at the end of 36 months, the book value of the car would be $1.00. And it had this provision:

"Lessee may sell vehicle or Lessor may sell it at termination of lease. Proceeds over book value remitted 100% to lessee; any deficiency under book value is assumed by Lessee."

Thus, we see that Appellee for the merely nominal consideration of $1.00 had the option of becoming the owner of the motor vehicle upon full compliance with the provisions of the lease. Also, Appellee contracted to pay as compensation for use of the automobile a sum substantially equivalent to, or in excess of, the value of the vehicle. The instruments involved were the printed forms of Appellant, so it is charged with extending or arranging for the consumer credit involved under the above definition. We think that the trial Court correctly found that the transaction between the parties was a credit sale within the meaning of the above definition under Regulation Z.

■ Appellant asserts that there was no finding by the trial Court that it was a "creditor" within the meaning of the Truth-in-Lending Act. It urges that there can be no implied finding to support the Court's

judgment because Appellant duly made a request for findings of fact pursuant to Rule 296, Tex.R.Civ.P. We cannot agree, and hold that implied findings may be made for the reason that Appellant did not object to the findings of the trial Court or request additional findings under the provisions of Rule 298, Tex.R.Civ.P. Such an implied finding is in order under the evidence. In addition to the above terms of the contract whereby Appellee was obligated to pay the sum of $5,400.00 in 36 monthly installments of $150.00, there is the newspaper advertisement of Appellant which listed this car and 15 others for sale with "complete financing available." The evidence supports the implied finding that Appellant was a creditor.

Article 5069–7.01(e) in part provides:

" * * * a contract in the form of a bailment or a lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the value of the motor vehicle sold and it is agreed that the bailee or lessee * * * has the option of becoming * * * the owner * * * [for no or nominal consideration] * * *."

This definition of a retail installment contract under the Texas Consumer Credit Code is similar to that of Regulation Z, and we think the trial Court correctly held that the instruments entered into by the parties constituted a retail installment contract under the Texas Consumer Credit Code. The evidence supports such a finding, as well as an implied finding that the Appellant was a "retail seller." In addition to the newspaper advertising of the automobile for sale and the fact of its being for sale at the Padgett's Used Cars, where Appellee made a down payment of $700.00 and executed the instruments involved, there is the testimony of Butch Howard, the general manager of Appellant. He testified as follows:

"Q I would like to go back into one point that we discussed, the circumstances under which one of Tom Benson Leasing owned vehicles might appear on a used car lot of a used car dealer somewhere around town. Can you tell me, does that, in the ordinary course of Tom Benson's dealing, occur on occasion?

"A Yes.

"Q A vehicle that you own appears on the car lot for sale, of a used car dealer?

"A True.

"Q Why would that occur?

"A As I explained in my deposition, we don't have facilities for selling used cars of any type. We're not on a main thoroughfare. Therefore on occasion we do let cars out to different locations. It's not a normal practice. It's something that does come up and we do allow it to occur."

"Q Then I take that testimony to mean that you do on occasion sell vehicles; Tom Benson Leasing?

"A Yes, we do.

"Q Do you retail vehicles as opposed to wholesaling them to dealers?

"A Very uncommonly; but, yes, we do.

"Q You do on occasion retail right to the consumer?

"A Yes."

Article 5069–7.01 defines a "retail seller" as "a person engaged in the business of selling motor vehicles to retail buyers in retail installment transactions."

All points of error have been considered and all are overruled. The judgment of the trial Court is affirmed.