**BROKERS LEASING CORPORATION, Appellant,**

v.

**STANDARD PIPELINE COATING COMPANY, Appellee.**

**No. 20150.**

Court of Civil Appeals of Texas, Dallas.

April 14, 1980.

Rehearing Denied June 27, 1980.

Eben D. Warner, III, Odessa, for appellant.

Daniel J. Sheehan, Jr., Dallas, for appellee.

Before AKIN, ROBERTSON and HUMPHREYS, JJ.

1. This statute was amended subsequent to this lawsuit.

HUMPHREYS, Justice.

Brokers Leasing Corporation appeals from a judgment awarding Standard Pipeline Coating Company, appellee, $5,000 attorney's fees and $19,059.04 as a penalty for charging usurious interest. Brokers argues that the court erred in finding that $9,529.52 was charged as interest and that there was an intent to charge interest. The primary issue is whether the contract between the parties was a conditional sales contract or a lease. We hold that the agreement was a lease and therefore the contract cannot be usurious. Accordingly, we reverse and render.

Brokers entered into an agreement with Standard in 1975 for the lease of two air compressors. The contract charges monthly rental payments of $567.87, an initial payment of $1,135.74, (the first and last month rental payments) and a $27.04 tax. This $567.87 monthly payment is broken down in the Lease Order, which was admitted into evidence. These figures are:

| | | |
|---|---|---|
| Price of Vehicle | $23,000. | |
| Leasing Charge | $ 1,000. | |
| Total | $24,000. | |
| Termination | | |
| Value | $ 2,234.94 | |
| Monthly Depreciation Reserve | | $371.08 |
| Monthly Interest Charge | | $128.92 |
| Monthly Leasing Charge | | $ 40.83 |
| Sales Tax | | $ 27.04 |
| Total Monthly Payment | | $567.87 |

After Standard defaulted in its payments, Brokers sued for the unpaid balance due of $23,850.54, plus attorney's fees. Standard counterclaimed for twice the amount of interest contracted for and reasonable attorney's fees under Tex.Rev.Civ.Stat.Ann. art 5069–1.06 (Vernon 1971),[1] alleging that the lease is really a conditional sales contract. Judgment was for Standard against Brokers for the penalty and that Brokers take nothing with respect to its suit against Standard on the lease.

The first question presented is whether the purported lease is actually a sales agreement which is subject to the usury law. Standard contends that several provisions of the contract reveal the true nature

of the transaction to be a sale. In support of this contention, it argues that the lessee bears the risk of loss for destruction of the equipment, pays all the taxes on the equipment, is to indemnify the lessor for any injury to person or property caused by the equipment, and is to keep insurance to fulfill its obligations. The lessor makes no warranties, and the lease is irrevocable for its full term. Moreover, the contract gives the lessee the option to purchase the equipment at any time for a fair and equitable purchase price, or at the end of the term for $2,234.94, which the parties agree to be "the fair market value of the equipment at the end of contract."

Standard relies on several cases which address the question of whether a contract is in reality a lease. Two Texas cases are *Tom Benson Chevway Rental & Leasing Inc. v. Allen*, 571 S.W.2d 346 (Tex.Civ.App. —El Paso 1978, writ ref'd n. r. e.), *cert. denied*, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *Davis Brothers v. Misco Leasing, Inc.*, 508 S.W.2d 908 (Tex.Civ.App. —Amarillo 1974, no writ). Although neither case concerned usury, one addressed the contention that an agreement designated as a lease was really a credit sale under the Truth-in-Lending Act, 15 U.S.C. §§ 1601–1681t (1970) and the other addressed the question of whether a security interest was created under the Uniform Commercial Code. The court in *Allen* was concerned with the definition of a credit sale in the Truth in Lending Regulations, 12 C.F.R. § 226.2 (1978). It found the agreement to be a credit sale because the "lessee" had the option of becoming the owner of a car at the end of the term of the agreement for only $1.00 and the contract provided for payments for use of the car in a sum equal to or greater than the value of the car. In *Davis Brothers* the court was concerned with the definition of "security interest" in Tex.Bus. & Com.Code § 1.201(37) (Tex.UCC) (Vernon 1968). The court considered the amount of the rentals and the amount of the option price to determine whether a lease was actually a secured transaction in which a party may have a security interest in the leased property.

These two cases are not controlling here because they do not concern the question of whether a contract which purports to be a lease is actually a conditional sale subject to the usury laws. They do reveal, however, the importance of a lessee's option to purchase the leased property at the end of the term in determining whether a contract is a lease.

Two other Texas cases have passed upon the usury question and are authority to hold that the contract here is a lease. In *Southwest Park Outpatient Surgery Ltd. v. Chandler Leasing Division*, 572 S.W.2d 53, 55 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ) the court answered in the negative that lessee's claim that a contract to lease equipment was actually a conditional sale and therefore usurious. The court determined that although the contract did contain an option to purchase the equipment at the end of the lease term, the lessee was not *obligated to purchase* the equipment and the monthly installments were not applied against the sale price. The court also relied on the fact that the option to purchase was for the fair market value of the property.

The Houston court cites *Security Life Insurance Co. v. Executive Car Leasing Co.*, 433 S.W.2d 915, 917–918 (Tex.Civ.App.— Texarkana 1968, writ ref'd n. r. e.), which also concerned a claim that a lease was actually a conditional sale. The contract in *Security Life Insurance Co.* did not contain an option to purchase. The court stated, however, that an option to purchase is indicative of an intent to make the transaction a conditional sale, especially where the installments are to be applied to the purchase price. 433 S.W.2d at 916. The court held that the contract was a lease primarily because there was no obligation to purchase in the contract. The lessee in that case argued that the contract was a sale because the terms of the contract assured that the capitalized cost of the automobile would be recovered by the lessor over the term of the lease. The court held that this did not render the contract a conditional sale because the lessee was never obligated to buy the vehicle. The court stated that the ab-

sence of an obligation to purchase "regardless of the period of time the lease was permitted to run or the amount of rentals paid, is very persuasive that the parties did not intend the agreement to be a sale or a conditional sale of the Buick automobile by one to the other." 433 S.W.2d at 917.

In this case appellee had the option to purchase at the price of $2,234.94, which by the terms of the contract was considered the fair market value of the property. There was no obligation to purchase and the rental payments were not to be applied to the purchase price. Nor was this option price nominal. The only evidence in the record which bears on the value of the equipment at the end of the lease term is the testimony of Mark Shiver, an employee of Standard at the time of the lease. He testified that the equipment would be worth approximately 25–30% of its original price at the end of the five years. Employing the 30% figure, the equipment would be worth approximately $6,900 at the end of five years. We hold that the option price of $2,234.94 is not such a nominal figure when compared to $6,900 as to render this transaction a conditional sale. Under these facts, we hold that the contract sued upon was a lease and not a conditional sales contract.

Neither is the lease capable of being construed as a sale by any of its other provisions. The provisions concerning risk of loss, duty to make repairs and pay taxes, and indemnify are all matters of bargaining and are certainly reasonable since the lessee is in possession of the property. The provision that the lessor makes no warranties does not render this a sale as either a seller or a lessor can disclaim warranties.

Standard also argues that this is a sale because over the five year term of the lease, Brokers would receive back the original purchase price of the equipment plus several thousand more. This does not necessarily render the contract a conditional sale. The lessor is entitled to protect himself against the possibility that the equipment may be worthless at the end of five years. Furthermore, Standard may have had valid reasons, such as tax considerations, which rendered it beneficial to lease rather than buy.

The fact that the lease is irrevocable is likewise not determinative. Leases are commonly irrevocable in the sense that a lessor can sue for rentals due under the unexpired term of the lease. The parties here contracted that the lessee could terminate the lease by purchasing the equipment at a fair and equitable price. An option to purchase at a fair and equitable price does not convert a lease into a sale.

Standard also argues that the overall transaction here shows that Brokers was selling this equipment to Standard. It is undisputed that Brokers did not manufacture the equipment but located the equipment for Standard and then obtained financing through a bank for the purchase of the equipment. The interest which the bank charged Brokers on this loan was then added to Standard's monthly rental payments. We cannot agree that this indicates that Standard's lease of equipment was in reality a sale. The only loan here was between Brokers and the bank. The fact that Brokers increased Standard's rental payments by the amount of this interest is a matter of contract negotiation.

Accordingly, we reverse and render judgment that Standard take nothing on its claim of usury against Brokers because there can be no usury in a lease transaction. *Maloney v. Andrews*, 483 S.W.2d 703, 704 (Tex.Civ.App.—Eastland 1972, writ ref'd n. r. e.).

### ON MOTION FOR REHEARING

On motion for rehearing, Brokers asserts that we should have remanded its original action against Standard for the balance due under the lease agreement for trial on the merits. We agree. Although Brokers attacked only the trial judge's finding of usury in its original brief and presented no point with respect to the trial judge's refusal to grant relief on its action against Standard, it did pray for a remand for trial on

its action against Standard. Since Brokers has now on rehearing presented this question by point of error, we remand Brokers' claim on the lease against Standard. Tex. R.Civ.P. 434. In all other respects, the motions for rehearing are overruled.

Reversed and remanded in part and rendered in part.