

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00269-CV

_____

RICKY CHINEANG LAC, Appellant and Appellee

V.

HIEN THI THANH NGUYEN, Appellee and Appellant

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 22-6524-431

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

This appeal arises from a dispute over an alleged real estate sales contract executed by Ricky Chineang Lac as seller and Hien Thi Thanh Nguyen as buyer. Following a bench trial, the trial court signed a judgment awarding Nguyen specific performance of the contract. On appeal, Lac contends that the trial court erred by (1) concluding that the alleged contract was valid even though the parties never agreed on essential terms, including the purchase price, and (2) granting Nguyen specific performance even though she had failed to prove that she was ready, willing, and able to perform under the contract. Nguyen filed her own notice of appeal and argues in a single issue that the trial court erred by failing to award her attorney's fees. We will affirm.

## I. BACKGROUND

On April 28, 2021, Lac and Nguyen entered into a contract[1] regarding Lac's home in Carrollton, Texas (the "Property"). The contract provided that Nguyen, who was referred to as the "Buyer," would take over the mortgage payments and would be responsible for "all financial payments associated with [the] Property," including insurance and utilities, during the contract's three-year term. The contract further stated that Lac, who was referred to as the "Seller," "relinquishe[d] all rights and responsibilities to [Nguyen] concerning [the] Property" and that Nguyen "agree[d] to accept [the] Property . . . as is" and would "be responsible for all . . . future repairs."

---

[1]Lac drafted the contract. Both parties signed it in the presence of a notary.

2

The contract specified that as of the contract date, the "Current Principal Balance" of the mortgage on the Property was $254,033.96. The contract required Nguyen to pay Lac ten percent of the Current Principal Balance if she "want[ed] to vacate [the] Property . . . during or after" the contract's three-year term and similarly obliged Lac to pay Nguyen this same amount if he "back[ed] out for any reason[]."

In May 2021, Nguyen moved into the Property and began making the mortgage payments. She continued to pay the mortgage, as well as the taxes and insurance on the Property, through the time of trial. In December 2021, Lac sent Nguyen a series of text messages in which he purported to unilaterally shorten the contract's term. In these text messages, Lac told Nguyen that she had only three months to buy the Property and that if she did not complete the purchase by then, she would have to move out.

In January 2022, Lac sent Nguyen a text message asking if she had obtained a pre-approval letter for a mortgage loan. On February 1, 2022, Nguyen emailed Lac a copy of her pre-approval letter from Loan Factory stating that she was qualified for financing to cover a $270,000 home purchase.[2] Two days later, Lac sent Nguyen

---

[2]The letter provided that Nguyen qualified for a $202,500 mortgage loan with a down payment of $67,500. Nguyen testified that her aunt had agreed to loan her the money to cover the down payment. Nguyen's aunt confirmed her willingness and ability to loan Nguyen the money for the down payment.

another text message informing her that he had decided not to sell the Property.[3] After Nguyen sent a response attempting to convince Lac to honor the contract, he texted back that she had thirty days to move out or he would change the locks.

In May 2022, Lac sent Nguyen another text informing her that she could continue to reside at the Property for the entirety of the contract's three-year term. But in this same text message, Lac stated that he did not have to sell the Property after the expiration of the contract's three-year term and reiterated that he did not want to sell it. He also advised Nguyen that he would waive the ten-percent termination fee if she wanted to move out before the contract expired.

In August 2022, Nguyen sued Lac for breach of contract,[4] and a bench trial was eventually held in May 2024. At trial, Nguyen characterized the contract as a "buy and sell" agreement between Lac and herself. She testified that Lac had agreed to sell her the Property for the $254,033.96 Current Principal Balance and to give her three years to obtain financing. But Lac testified that he considered the contract to be a lease with an option to purchase and that the parties had never agreed on a specific purchase price.

---

[3]As noted, the contract required Lac to pay a termination fee equal to ten percent of the Current Principal Balance if he "back[ed] out for any reason[]." However, Lac did not tender payment of the termination fee to Nguyen when he informed her that he had decided not to sell the Property.

[4]Nguyen's original petition also included claims for promissory estoppel and common law fraud as well as a request for declaratory relief.

After considering the evidence, the trial court signed a judgment awarding Nguyen specific performance of the contract and ordering Lac to sell the Property to her for $254,033.96. Lac filed a notice of appeal and requested that the trial court file findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. The trial court complied with this request. *See* Tex. R. Civ. P. 297. Nguyen then filed her own notice of appeal.

## II. DISCUSSION

### A. The Contract's Validity

In Lac's first and third issues, he contends (1) that the evidence is legally and factually insufficient to support the trial court's finding that Lac and Nguyen agreed upon a purchase price of $254,033.96 for the Property and (2) that the trial court erred by concluding that the contract is valid and enforceable based, in part, on that finding. We disagree.

#### 1. Standard of Review

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). Accordingly, when reviewing the legal or factual sufficiency of the evidence to support a trial court's findings of fact, we apply the same standards used to review jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex. App.—

5

Dallas 1981, writ ref'd n.r.e.) (citing *Hall v. Villarreal Dev. Corp.*, 522 S.W.2d 195, 195–96 (Tex. 1975)).

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) legal or evidentiary rules bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)). Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003).

When reviewing whether the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that

the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If reversing for factual insufficiency, we must detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient—that is, why the evidence supporting the finding is so weak or is so against the great weight and preponderance of the evidence that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Pool*, 715 S.W.2d at 635.

When conducting a factual-sufficiency review, we do not substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* Thus, when resolving factual disputes, the trial court may choose to believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Zenner v. Lone Star Striping & Paving, L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

If the evidence is factually sufficient, then it is necessarily legally sufficient and we need not also analyze for legal sufficiency. *Kadow v. MAA, Watermark*, No. 02-22-00038-CV, 2022 WL 17841131, at *3 (Tex. App.—Fort Worth Dec. 22, 2022, no pet.) (mem. op.) (first citing *S.B. v. Tex. Dep't of Fam. & Protective Servs.*, 654 S.W.3d 246, 252 (Tex. App.—Austin 2022, pets. denied); and then citing *In re A.S.*, No. 02-

16-00076-CV, 2016 WL 3364838, at *7 (Tex. App.—Fort Worth June 16, 2016, no pet.) (mem. op.)); *see also In re M.V.G.*, 440 S.W.3d 54, 60 (Tex. App.—Waco 2010, no pet.) (citing *In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.)).

We review de novo a trial court's conclusions of law. *See Compass Bank v. Goodman*, 416 S.W.3d 715, 718–19 (Tex. App.—Dallas 2013, pet. denied). Although we are not bound by the trial court's legal conclusions, we will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support a correct legal theory. *Id.*

### 2. Purchase Price

To create an enforceable contract, the parties must agree to its essential terms. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "Where an essential term is open for future negotiation, there is no binding contract." *Id.* (citing *Gerdes v. Mustang Expl. Co.*, 666 S.W.2d 640, 644 (Tex. App.—Corpus Christi 1984, no writ)). A real estate sales contract's essential terms include the price, the description of the property, and the seller's signature. *Jetall Cos., Inc. v. Jefferson Smith, L.L.C.*, No. 01-20-00461-CV, 2022 WL 2347922, at *6 (Tex. App.—Houston [1st Dist.] June 30, 2022, pet. denied) (mem. op.) (first citing *Naumann v. Johnson*, No. 03-19-00380-CV, 2021 WL 2212725, at *3 (Tex. App.—Austin June 1, 2021, no pet.) (mem. op.); and then citing *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927–28

8

(Tex. App.—Tyler 2007, no pet.)).  Thus, to prevail on her breach-of-contract claim, Nguyen was required to prove that she and Lac had agreed on a purchase price for the Property.

Although the contract itself did not explicitly state that Lac had agreed to sell Nguyen the Property for $254,033.96, Nguyen put on evidence showing that this was, in fact, the parties' agreement.[5]  She unequivocally testified that the $254,033.96 Current Principal Balance reflected in the contract was the agreed-upon purchase price for the Property.  But Lac denied this and asserted that the Current Principal Balance was "not the sales price."  When asked why he had inserted this figure in the contract, Lac explained that he had included it "just to let [Nguyen] know what the balance was on the house."  But as factfinder and the sole judge of the witnesses' credibility, the trial court was free to reject Lac's explanation.  *See Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 913 (Tex. App.—Fort Worth 2018, pet.

---

[5]Even though the statute of frauds provides that a contract for the sale of real estate is not enforceable unless it is in writing, Tex. Bus. & Com. Code Ann. § 26.01(a)(1), (b)(4), the parties to such a contract are nevertheless "allowed to put on evidence of an oral agreement concerning payment terms," *Millennium Props. & Dev., Inc. v. Lee*, No. 2-01-385-CV, 2003 WL 360655, at *1 (Tex. App.—Fort Worth Feb. 20, 2003, pet. denied) (mem. op.) (citing *Botello v. Misener-Collins Co.*, 469 S.W.2d 793, 795 (Tex. 1971)).  Further, while the parol evidence rule provides that—in the absence of fraud, accident, or mistake—extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written instrument that is facially complete and unambiguous, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) (op. on reh'g), the written contract in this case is not facially complete or unambiguous because it does not contain explicit payment terms, *see Millennium Props. & Dev., Inc.*, 2003 WL 360655, at *2.  Accordingly, Nguyen was entitled to put on evidence of the parties' agreement concerning the purchase price. *See id.*

9

denied); *Zenner*, 371 S.W.3d at 314. And Lac's credibility on this point was undermined by a text message that he sent to Nguyen in November 2021 informing her that the mortgage's principal balance had increased to approximately $270,000.00 because of his participation in a COVID-19 payment-deferral program. In the text message, Lac suggested "draw[ing] up a new contract with updated numbers" and asked Nguyen "if [she] want[ed] to back out" of the agreement. Based on this communication, a factfinder could reasonably infer that the Current Principal Balance was an integral part of the contract (such as the purchase price), not a purely informational component as Lac suggested at trial.

On this record, we cannot conclude that the credible evidence supporting the trial court's determination that the $254,033.96 Current Principal Balance constituted the agreed-upon purchase price for the Property is so weak that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635. Accordingly, the evidence is factually sufficient. *See id.* And it is thus legally sufficient as well. *See Kadow*, 2022 WL 17841131, at *3.

### 3. Agreement on Material Contract Terms

Lac contends that the trial court erred by concluding that he and Nguyen had formed a valid contract because the evidence showed that they had failed to agree on three purportedly material terms: the purchase price, the timeline for performance, and the nature of the agreement. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221. We disagree.

10

We have already determined that the evidence is legally and factually sufficient to support the trial court's finding that the $254,033.96 Current Principal Balance reflected in the contract was the agreed-upon purchase price for the Property. Thus, we reject Lac's argument that the contract was invalid because the parties never agreed on a purchase price.

Further, the only evidence Lac cites to support his assertion that the parties never agreed on the timeline for performance is Lac's own communications purporting to unilaterally shorten the contract's term.[6] But these communications—which were sent nearly nine months after the contract was signed—do not show that the parties failed to agree on the timeline for performance. The contract clearly and unambiguously stated that it had a three-year term running from May 1, 2021, to April 30, 2024. Indeed, in his communications purporting to shorten the performance timeline, Lac acknowledged the contract's original three-year term. Thus, at most, the relied-upon communications show that Lac may have changed his mind about the amount of time that he wanted to give Nguyen to purchase the Property; they fail to show that he never agreed to a three-year timeline in the first place.

Finally, Lac contends that the contract is invalid because he and Nguyen had conflicting understandings regarding the nature of their agreement—whether it was a

---

[6]We note that a party cannot unilaterally modify a contract; rather, a contract modification requires "a meeting of the minds supported by consideration." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.—Dallas 2008, no pet.) (op. on reh'g).

11

contract for the sale of the Property or a lease with an option to purchase. But the cases that Lac cites for the proposition that mutual assent to the "nature of the agreement" is required for the creation of a valid contract are inapposite,[7] and we have found no cases supporting this proposition. Indeed, parties routinely ask courts to settle disputes about the nature of their agreements while at the same time recognizing that such agreements are enforceable. *See, e.g.*, *Brokers Leasing Corp. v. Standard Pipeline Coating Co.*, 602 S.W.2d 278, 279–81 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (resolving parties' dispute regarding whether their contract was a usurious conditional sales contract or a lease); *see also Mirant Peaker, LLC v. S. Md. Elec. Coop. (In re Mirant Corp.)*, Adv. No. 04-4073, 2005 WL 6443618, at *6–9 (Bankr. N.D. Tex.

---

[7]Lac cites two cases to support this proposition, but neither actually does so. In *Ward v. Ladner*, the appellee asserted that the appellant had orally agreed to sell him certain real property for an agreed-upon price, but the appellant maintained that he had agreed only to rent the property to the appellee. 322 S.W.3d 692, 696 (Tex. App.—Tyler 2010, pet. denied) (op. on reh'g). Following a jury trial, the trial court signed a judgment declaring that an enforceable oral sales contract existed and ordered specific performance. *Id.* On appeal, the appellant did not argue that the parties' conflicting understandings about the nature of their agreement rendered the contract unenforceable, *see generally id.*; rather, he argued that there was a variance between the pleadings and the proof as to one of the jury questions and raised several challenges to the trial court's specific-performance order, *id.* at 696–702. The court of appeals rejected all of his arguments and affirmed. *Id.* at 702. Thus, *Ward* does not support the proposition that parties' lack of mutual understanding about the nature of their agreement precludes the formation of an enforceable contract; indeed, if anything, *Ward* actually undermines it. The second case that Lac cites, *Wells v. Hoisager*, involved a dispute about whether there was a meeting of the minds to form a valid contract for the sale of real property, but there was no dispute about the nature of the agreement. *See generally* 553 S.W.3d 515 (Tex. App.—El Paso 2018, no pet.). Rather, the parties' dispute centered on whether there was a meeting of the minds about the property interest being sold and when the enforceable agreement was purportedly created. *See id.* at 522–23. Thus, this case is also inapposite.

Nov. 22, 2005) (granting summary declaratory judgment resolving parties' dispute regarding whether their agreement was a lease of real property or an "electric energy and capacity and operation and maintenance agreement"); *Hotel Syracuse, Inc. v. City of Syracuse Indus. Dev. Agency (In re Hotel Syracuse, Inc.)*, 155 B.R. 824, 830, 844 (Bankr. N.D.N.Y. 1993) (granting debtor summary declaratory judgment that agreement was a security agreement, not a lease or a contract for the sale of real property). Accordingly, we reject Lac's contention that Nguyen's and his conflicting understandings regarding the nature of their agreement rendered their contract invalid.[8]

Having determined that the trial court's finding that the parties agreed upon a $254,033.96 purchase price for the Property is supported by sufficient evidence and having rejected Lac's contention that the contract was rendered invalid by the parties' purported failure to agree about the timeline for Nguyen's performance or the nature

---

[8]Even if we were to assume that mutual assent to the agreement's nature were generally material, we cannot conclude that the parties' lack of mutual understanding on this point held any particular significance in this case. Even if the agreement were a lease with an option to purchase as Lac asserts, it would appear that Nguyen exercised her option by communicating to Lac that she wanted to purchase the Property and tendering performance. *See Maxwell v. Lake*, 674 S.W.2d 795, 798 (Tex. App.—Dallas 1984, no writ) (holding that "where a contract is silent regarding the method of exercising [a purchase] option, giving timely notice to the optionor and tendering performance within a reasonable time thereafter is sufficient to exercise the option"). Once Nguyen exercised her option, Lac would be obligated to sell her the Property at the agreed-upon purchase price. Thus, the parties' dispute turned on whether they had, in fact, agreed on a purchase price, not whether the contract was properly characterized as a sales contract or a lease with an option to purchase.

of their agreement, we hold that the trial court did not err by concluding that Lac and Nguyen had formed a valid, enforceable contract.

We overrule Lac's first and third issues.

## B. Specific Performance

In his second issue, Lac contends that the trial court erred by awarding Nguyen specific performance because she failed to prove that she was ready, willing, and able to perform the contract.[9] We disagree.

Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 829 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Specific performance is not a separate cause of action but, rather, is an equitable remedy that is used as a substitute for monetary damages when such damages would not be adequate. *Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citing *Stafford v. S. Vanity Mag., Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied)). "A party seeking specific performance must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation and (2) the readiness, willingness, and ability to perform at relevant times." *Blue Moon Venture, L.L.C. v. Horvitz*, No. 14-09-00459-CV, 2010 WL

---

[9]Lac also argues that the trial court's specific-performance award was erroneous because Nguyen failed to prove the existence of a valid, enforceable contract. But having already determined that the trial court did not err by concluding that the parties had formed a valid, enforceable contract, we need not—and therefore do not—address this alternative argument. *See* Tex. R. App. P. 47.1.

14

4013533, at *1 (Tex. App.—Houston [14th Dist.] Oct. 14, 2010, no pet.) (mem. op.) (citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593–94, 601 (Tex. 2008)).

Lac's second issue amounts to an evidentiary-sufficiency challenge to the trial court's finding that Nguyen "showed that she was ready, willing, and able to complete the sales transaction." Relying on *DiGiuseppe*, Lac asserts that Nguyen was required to provide "concrete proof, such as financial documents or loan approvals" to show that she was able to perform the contract. But in *DiGiuseppe*, the Texas Supreme Court acknowledged that a buyer is not required to demonstrate that she had a binding commitment for financing in order to raise a fact issue regarding her ability to perform under a sales contract when there is evidence that a third party was willing to lend money for the purchase of the property.[10] 269 S.W.3d at 602 (citing *Corzelius v. Oliver*, 220 S.W.2d 632, 635–36 (Tex. 1949)).

---

[10] Though these cases were not cited by the parties, we note that several opinions from our sister courts have espoused the legal principle that a party relying on third-party financing to perform a sales contract must show that it had a firm commitment for financing to be entitled to specific performance because otherwise it cannot demonstrate its ability to perform. *See Elijah Ragira/VIP Lodging Grp., Inc. v. VIP Lodging Grp., Inc.*, 301 S.W.3d 747, 755 (Tex. App.—El Paso 2009, pet. denied); *Luccia v. Ross*, 274 S.W.3d 140, 147 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Hendershot v. Amarillo Nat'l Bank*, 476 S.W.2d 919, 920 (Tex. App.—Amarillo 1972, no writ). But this principle cannot be absolute because, as noted, the Supreme Court has recognized that—at least in certain situations—a buyer is not required to demonstrate that it had a binding commitment for financing in order to raise a fact issue regarding its ability to perform under a sales contract. *DiGiuseppe*, 269 S.W.3d at 602. Indeed, in *TLC Hospitality, LLC v. Pillar Income Asset Management, Inc.*, the Tyler Court of Appeals acknowledged the authorities cited above but, citing *DiGiuseppe*, nevertheless held that the evidence was sufficient to support the trial court's finding that the buyer had demonstrated its ability to perform even though it did not have a

15

Here, Nguyen presented evidence that as of February 1, 2022, she had been approved for financing to cover a $270,000 home purchase—a $202,500 mortgage loan with a down payment of $67,500—and that her aunt had agreed to loan her the money to cover the down payment. Further, Nguyen's aunt gave testimony confirming her willingness and ability to loan Nguyen the money for the down payment.[11]

By presenting evidence that a third party was willing to lend money for the purchase of the Property, Nguyen created a fact issue regarding her ability to perform the sales contract. *See DiGiuseppe*, 269 S.W.3d at 602; *TLC Hospitality, LLC*, 570 S.W.3d at 769–70. Thus, we cannot conclude that the evidence supporting the trial court's determination that Nguyen was ready, willing, and able to perform the sales contract is so weak that the finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Pool*, 715 S.W.2d at 635. We therefore conclude that this finding is supported by both legally and factually sufficient evidence. *See id.*; *see*

---

firm financing commitment. 570 S.W.3d 749, 769–70 (Tex. App.—Tyler 2018, pet. denied). Thus, notwithstanding *VIP Lodging Grp., Inc.*, *Luccia*, and *Hendershot*, we conclude that by presenting evidence that a third party was willing to lend money for the purchase of the Property, Nguyen raised a fact issue regarding her ability to perform. *See DiGiuseppe*, 269 S.W.3d at 602; *TLC Hospitality, LLC*, 570 S.W.3d at 769.

[11]Nguyen's aunt testified that she had taken out a $100,000 home-equity loan to fund her loan to Nguyen for the down payment and that she had received these home-equity-loan proceeds on April 1, 2022. Nguyen's loan-approval letter stated that it was valid through May 2, 2022. Thus, Nguyen's aunt had the ability to fund the down payment—and Nguyen had the ability to close a purchase-money loan for the Property—within the timeframe contemplated by the pre-approval letter.

16

*also Kadow*, 2022 WL 17841131, at \*3.  Accordingly, the trial court did not err by awarding Nguyen specific performance.

We overrule Lac's second issue.

## C.  Nguyen's Sole Issue:  Attorney's Fees

In her sole appellate issue, Nguyen contends that the trial court erred by declining to award her attorney's fees under Section 38.001 of the Texas Civil Practice & Remedies Code.  We disagree.

### 1.  Relevant Background

During the May 22, 2024 bench trial, Nguyen expressed her intention to seek attorney's fees based on her breach-of-contract claim.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b)(8) (providing that "[a] person may recover reasonable attorney's fees from an individual . . . if the claim is for . . . an oral or written contract").  But at trial, she did not present any evidence of her attorney's fees.  Accordingly, the trial court instructed Nguyen's counsel to submit affidavits supporting the requested attorney's fees "by a week from [the trial date]."  *See* Tex. Gov't Code Ann. § 311.005(10) (defining a "[w]eek" as "seven consecutive days").

Though Nguyen's counsel filed affidavits supporting the requested attorney's fees, he did not file them until May 30, 2024—eight days after the trial date.

On May 31, 2024, the trial court issued its final judgment in which it awarded Nguyen specific performance of the contract but declined to award her any attorney's fees.  Although the judgment itself did not explain the trial court's reasons for denying

17

Nguyen's request for attorney's fees, the trial court later explained that it had not awarded attorney's fees because Nguyen's counsel's affidavits had not been timely filed.

### 2. Analysis

"[T]rial courts have broad discretion to manage and control their dockets." *Castro v. Schlumberger Tech. Corp.*, 673 S.W.3d 294, 305 (Tex. App.—San Antonio 2023, no pet.) (citing *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982)). Thus, we review a trial court's decision to exclude late-filed evidence under an abuse-of-discretion standard. *See Haight Fam., LLC v. Germania Farm Mut. Ins. Ass'n*, No. 01-22-00508-CV, 2024 WL 234678, at *4 (Tex. App.—Houston [1st Dist.] Jan. 23, 2024, no pet.) (mem. op.) ("[W]e review a trial court's evidentiary rulings for an abuse of discretion, and the trial court was within its discretion to exclude late-filed, unauthenticated evidence."); *see also Duchene v. Hernandez*, 535 S.W.3d 251, 257 (Tex. App.—El Paso 2017, no pet.) (concluding trial court had not abused its discretion by excluding late-filed summary-judgment response based on counsel's "bare assertions" of calendaring errors and other mistakes).

Here, Nguyen's counsel did not file his attorney's-fees affidavits by the deadline set by the trial court.[12] Under these circumstances, we cannot conclude that the trial

---

[12]In her briefing, Nguyen asserts that the affidavits were timely filed. But this assertion betrays Nguyen's misunderstanding of Civil Procedure Rule 4. The trial court gave the parties one week from the trial date to file their affidavits, and as Nguyen acknowledges, one week equates to seven days. *See* Tex. Gov't Code Ann.

court abused its broad discretion by excluding this evidence and declining to award Nguyen attorney's fees.

We overrule Nguyen's sole issue.

## III. CONCLUSION

Having overruled all three of Lac's issues and having overruled Nguyen's sole issue, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: May 8, 2025

---

§ 311.005(10). Under Rule 4, when computing a period of time, "the day of the act, event, or default after which the designated period of time begins to run"—here, the trial date—is not included, but the last day of the computed time period is included. Tex. R. Civ. P. 4. Thus, the trial date—May 22—was "day zero," May 23 was day one, and—extrapolating forward—May 29 was day seven. *See id.* Because the affidavits were not filed until May 30—the eighth day after the trial date—they were untimely. *See* Tex. Gov't Code Ann. § 311.005(10); Tex. R. Civ. P. 4.